29 C.C.P.A. (Patents)

**SLOAN v. PETERSON et al. (two cases).**

**PETERSON et al. v. SLOAN.**

**Patent Appeals Nos. 4519–4521.**

Court of Customs and Patent Appeals.

June 1, 1942.

Donald M. Carter, of Chicago, Ill., for Sloan.

Edmund H. Parry, Jr., of Washington, D. C. (Herbert H. Porter, Mason & Porter, and Edward B. Beale, all of Washington, D. C., of counsel), for Peterson et al.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in interference proceedings from the decisions of the Board of Appeals of the United States Patent Office. In appeals Nos. 4519 (interference No. 75,856) and 4520 (interference No. 75,-857), appellant, William E. Sloan, has appealed from the board's decisions affirming the decisions of the Examiner of Interferences awarding priority of the inventions defined in all of the counts—Nos. 1, 2, and 3, in interference No. 75,856, and 1 to 5, inclusive, in interference No. 75,-857—to appellees Walker F. Peterson and Albert U. Walter. In appeal No. 4521, appellants, Walker F. Peterson and Albert U. Walter, have appealed from the decision of the Board of Appeals affirming the decision of the Examiner of Interferences awarding priority of the subject matter defined in counts 6 and 7 in interference No. 75,857 to appellee William E. Sloan.

Owing to the fact that the evidence pertaining to the two interferences has been presented in a single record, we shall dispose of the issues presented in one opinion.

### Appeal No. 4519
### Interference No. 75,856

The interference is between the application of William E. Sloan, No. 194,633, filed March 8, 1938, and appellees' (Walker F. Peterson and Albert U. Walter) patent No. 2,089,223, issued August 10, 1937, on an application filed February 10, 1936. Appellant is the junior party and, as his involved application was filed subsequent to the issuance of appellees' patent, the burden would be upon him to establish priority of invention beyond a reasonable doubt were it not for the hereinafter related facts and circumstances. At the close of his rebuttal testimony, appellant, pursuant to rule 154(e) of the Rules of Practice in the United States Patent Office, 35 U.S.C.A. Appendix, offered in evidence his patent application, serial No. 128,931, filed March 4, 1937, which, it is argued in the brief of counsel for appellant, discloses the invention defined by the counts in issue. It is further argued in the brief of counsel that, as appellant's earlier filed application was copending with the application which matured into appellees' involved patent, appellees' patent was issued inadvertently, and that, therefore, appellant has the burden of establishing priority of invention by a preponderance of the evidence, not by evidence beyond a reasonable doubt. Although appellees moved to strike appellant's application No. 128,931 from the record, the Examiner of Interferences, for reasons not of importance here, overruled the motion and held that that application was properly before

him. However, without discussing the disclosure contained in that application or holding that such application did not disclose the involved invention, the Examiner of Interferences held that the burden was upon appellant to establish priority of invention beyond a reasonable doubt. On appeal to the Board of Appeals, appellant assigned as error that holding of the Examiner of Interferences. The Board of Appeals, however, did not discuss the disclosure contained in appellant's application No. 128,931, nor did it state what degree of proof was required of appellant. Accordingly, we are here confronted with an issue neither discussed nor decided by the tribunals of the Patent Office, to wit: Does appellant's application No. 128,931 disclose the involved invention? If it does, there being continuity between that application and appellant's involved application, the burden was upon appellant to establish priority of invention by a preponderance of the evidence. Spaulding v. Norden, 1904 C.D. 439, 442, 443; White v. Trube, 1277, 84 F.2d 216, 23 C.C.P.A., Patents, 1275; Becket v. Arness, 112 F. 2d 1011, 27 C.C.P.A., Patents, 1251. If, on the other hand, appellant's earlier filed application does not disclose the involved invention, the burden was upon appellant to establish priority of invention beyond a reasonable doubt. Walker v. Altorfer, 111 F.2d 164, 27 C.C.P.A., Patents, 1130; Van Cleef v. Tierney, 118 F.2d 911, 28 C.C.P.A., Patents, 1039; William G. H. Finch v. Garett Van Der Veer Dillenbach, Jr., 121 F.2d 459, 28 C.C.P.A., Patents, 1171.

The involved invention relates to a device for obtaining a quiet flow of water in the flushing of water-closets, and, for the purpose of convenience, may be referred to as a "quiet flow retarding" or throttling device.

As is well known, the flushing of a water-closet bowl may be accomplished either by means of a flush valve directly connected between the water-supply line and the toilet bowl, or by means of water contained in a "gravity discharge flush tank." When a "gravity discharge flush tank" is used, the water is supplied to the tank by means of a valve controlled by a ball cock.

It appears from appellees' patent, in which the counts originated, that the quiet flow retarding or throttling device may be located between the flush valve and the toilet bowl, or it may be located between the water-supply line and the flush valve.

The device in question is sufficiently defined in the involved counts of which count 3 is illustrative. We quote count 3: "3. A quiet flow retarding device for liquids comprising means providing a conduit, and a body located in said conduit and supported against axial movement relative thereto, the internal wall of the conduit and the adjacent wall of the body providing an annular space which remains constantly open during the operation of the device for the flow of liquid and which causes the liquid to flow in a sheet having a thickness of less than 0.125 inch for a length in the direction of the flow of more than ten times the thickness of the sheet."

It will be observed that in the device called for by the quoted count, the internal wall of the conduit and the adjacent wall of the body located in the conduit provide an annular space for the flow of liquid therethrough. During the operation of the device, the liquid is caused "to flow in a sheet having a thickness of less than 0.125 inch for a length in the direction of the flow of more than ten times the thickness of the sheet."

Although counsel for appellant has, in his brief, compared the elements in the involved counts with the disclosure in appellant's earlier filed application and has argued with considerable plausibility that that application discloses the involved invention, counsel for appellees have not informed the court as to their views regarding the disclosure in that application, nor have they attempted to answer the arguments presented here by counsel for appellant.

Appellant's earlier filed application relates to a flush valve in combination with a throttling device. The throttling device comprises a cylindrical body or plug located in a cylindrical conduit, having an "annular space" about .015 inch in diameter between the inner wall of the conduit and the outer wall of the body located therein to permit the flow of water therethrough. The wall of at least one of the surfaces, that is the surface of either the wall of the conduit or of the body located therein, is roughened.

It is argued here by counsel for appellant that the "annular space" disclosed in appellant's earlier filed application extends for a distance in the axial direction of the flow of water more than ten times the width of such annular space, as called for by the counts in issue. Counsel for appellees do

not challenge that statement, and, although we are not entirely clear that appellant's earlier filed application discloses that limitation, we shall assume for the purpose of this decision that it does.

We hold, therefore, that appellant's earlier filed application discloses a throttling device conforming to all of the limitations contained in the counts in issue, and that the burden was upon appellant to establish priority of invention by a preponderance of the evidence.

It may be observed at this point that appellant states in his earlier filed application that the flush valve, which includes the throttling device in combination, is "designed to give a rate of flow during the flush period ranging between twenty and twenty-five gallons a minute" at pressures ranging from five to one hundred pounds to the square inch. (The importance of that feature of appellant's disclosure in that application will appear more clearly hereinafter.)

Counsel for appellant contended before the tribunals of the Patent Office, and contends here, that appellant has established that he conceived and reduced to practice devices (appellant's exhibits 2, 7, and 13) conforming to the involved counts in 1933. The Examiner of Interferences held, however, in which holding the Board of Appeals concurred, that those exhibits do not conform to the limitations contained in the counts in issue in that the body members within the conduits of those devices were made of perforated discs and, in the operation of those devices, the flow of water was through the perforations in the discs and not in a "sheet" through an annular space between the discs and the walls of the conduits, as called for by the counts in issue. In his decision, the Examiner of Interferences described and discussed those exhibits in considerable detail, and as the record fully substantiates the holding of the tribunals of the Patent Office that, for the reasons stated by those tribunals, the exhibits do not conform to the structure defined by the counts in issue, we deem it unnecessary to discuss them here. If, however, by a somewhat strained construction of the involved counts it might be held that those devices (exhibits 2, 7, and 13) conformed to the limitations contained in the counts, it is apparent from the record that those devices were not satisfactory and were abandoned by appellant long prior to the filing of appellant's involved application.

Counsel for appellant also contended before the tribunals of the Patent Office, and each of those tribunals held, that appellant had established that he conceived the involved invention on February 14, 1935, and reduced it to practice by the successful operation of a device conforming to the counts in issue on February 15 of that year. The decisions of those tribunals were based upon a drawing (exhibit 15), bearing the date of February 14, 1935, made by appellant's witness Emil J. Kocour, a draftsman employed by the Sloan Valve Company of which appellant was then president, exhibit 16, which is a silencing device made by appellant's witness James J. Swartz, employed by the Sloan Valve Company as "tool room foreman," and the successful operation of exhibit 16 by the witness Emil J. Kocour and the witness Carl H. Krause, who was an employee in the testing and developing department of the Sloan Valve Company.

It appears from the testimony of appellant and that of the witness Kocour that exhibit 15 was made in accordance with instructions given the witness Kocour by appellant Sloan.

The witness Swartz testified that he made exhibit 16 in conformity with the drawing (exhibit 15). When asked when he made the device (exhibit 16) he said: "That was made the date right here, 2–14–35 [referring to the date on the drawing, exhibit 15]." The witness also stated that after making exhibit 16 he turned it over for testing the day "following this date on here [referring to the date on exhibit 15]." He did not testify that he saw the device (exhibit 16) operated.

The witness Krause testified that he and the witness Kocour tested exhibit 16 on February 15, 1935. When asked to state the results of that test, he said: "The test sheet Sloan exhibit 17 shows that we were able to get quiet between a rate of flow of twelve to fifteen gallons per minute."

Appellant's exhibit 17 is a test sheet, alleged to indicate the results of the tests made by the witnesses Krause and Kocour of the device (exhibit 16). It bears the date "2–15–35."

The witness Krause further stated that it was the purpose of appellant Sloan to design and make a throttling or silencing device, a flush valve, and a closet bowl that would operate together quietly with a rate of flow of water from twelve to fifteen gallons per minute, and that such combinations were intended to be used in small private

homes, which, he stated, "could not handle a flush valve or bowl that had the rate of flow that it requires to operate the bowls that were on the market."

It may be stated at this point that the bowls and flush valves on the market in 1935 and apparently in November, 1938 (the time of the taking of appellant's testimony in this case), required, according to the testimony of appellant Sloan, a rate of flow of from twenty to thirty gallons per minute, depending on the kind of bowl used, and that the average rate of flow was about twenty-five gallons per minute.

The witness Krause testified that the dates appearing on appellant Sloan's exhibits 3, 8, and 14 (which exhibits are test sheets showing the results of the tests of Sloan's devices, exhibits 2, 7, and 13, respectively, herein before referred to) were placed thereon by the witness Irving H. Russell, chief engineer of the Sloan Valve Company on the dates indicated. He was not asked, however, and he did not state by whom exhibits 15 and 17 were dated, or when the dates were placed thereon. It is apparent from the testimony of the witness that he had no independent recollection of either the date of the alleged tests of exhibit 16 or of the results of those tests, and that he relied upon the dates appearing on exhibits 15 and 17 to fix the date of such tests and upon the data appearing on exhibit 17 for the results of such tests.

The witness Kocour testified that the drawing (appellant's exhibit 15) was made on February 14, 1935; that exhibit 16 was "completed on or the day after February 14, 1935"; that exhibit 17 was a record of tests made on exhibit 16 on February 15, 1935; that he and the witness Krause tested exhibit 16 on February 15, 1935; that he adjusted the device (exhibit 16) so as to get approximately fifteen gallons of water per minute; that the device operated quietly at a rate of flow of from twelve to fifteen gallons per minute at any pressure up to one hundred pounds; that at that time he was interested only in securing a rate of flow of twelve to fifteen gallons per minute; and that the reason he was interested in that low rate of flow was that the Sloan Valve Company decided to make throttling devices, flush valves, and closet bowls that would operate together at a low rate of flow for use in small homes where ordinary flush valves and toilet bowls, which had a rate of flow between twenty and thirty gallons per minute, were not suitable. He

further stated that exhibit 17 was compiled from notes which he had written out in long hand on the day the tests were made. Although the drawing (exhibit 15) was made by the witness, he was not asked when or by whom the date, February 14, 1935, was placed thereon; nor was he asked to state when or by whom the date, February 15, 1935, was placed on exhibit 17. Furthermore, in testifying that exhibit 15 was made on February 14, 1935, that the tests of exhibit 16 took place on February 15 of that year, and that the test sheet was made on the latter date, it is evident that the witness was relying upon the dates appearing on exhibits 15 and 17, and that he had no independent recollection of the date when exhibits 15 and 17 were made or when the tests of exhibit 16 took place. It appears from the testimony of the witness that immediately after the tests of the device (exhibit 16), he made a drawing (Sloan exhibit 18), and that exhibit 16 was modified in accordance with that drawing. (The drawing indicates that instead of *one* annular chamber, exhibit 16, as modified, had *two* annular chambers. It is in its modified form that exhibit 16 now appears.) The witness stated that although he had tested the modified device, he made no record of the tests and did not know why a record was not kept. Although exhibit 18 is dated "2–15–35," the witness was not asked to state when or by whom the date was placed thereon.

Appellant's witness Irving H. Russell testified that he made no tests of exhibit 16; that the initials "E. J. K.," appearing on exhibit 17, were the initials of the witness Emil J. Kocour; and that the initials "C. H. K." appearing on that exhibit, were the initials of the witness Carl H. Krause. Although in testifying regarding the development of a closet bowl which would operate at a low rate of flow of about fifteen gallons per minute, the witness stated that such a bowl was developed and successfully tested in the summer of 1937 and that a flush which would operate quietly.at a low rate of flow was made sometime during that year, he did not testify that he had ever seen exhibits 15, 16, 17, or 18 prior to the taking of his testimony. The witness testified that a flush valve having a throttling device therein was made in accordance with a drawing (Sloan exhibit 38), dated January 12, 1937. Although he described the flush valve in a general way, he was unable to give any of its dimensions except that the supply pipe of the valve was one inch in diameter. He stated that the valve

was intended to be used with closet bowls developed by the Sloan Valve Company; that it operated at a low rate of flow of about fifteen gallons per minute; and that tests were made of it. Just when the tests were made, he did not state.

Appellant William E. Sloan testified that the drawing (exhibit 15) was made under his directions by the witness Kocour. Relative to the tests of exhibit 16, he said that he was in and out of the test room while they were being made. When asked on cross-examination as to the results of the tests of exhibit 16 prior to its modification, he said:

"*  *  *  *  *The only thing that I recall now about the test was that we were considerably elated in one respect and disappointed in another.*

*"We were pleased that we got silence with so large a crevice. We would have been better pleased if we could have gotten a larger rate of flow quietly."* (Italics ours.)

Sloan further stated that exhibit 16 operated successfully as indicated by the test sheet (exhibit 17), but that about fifteen gallons per minute was the maximum amount "we could get quiet"; that "it was successful for silence up to fifteen gallons a minute"; that it "was successful in principle, but the construction of the whole apparatus or device was not such as we would attempt to market, but is such as you usually make up for an experimental test"; that the tests on exhibit 16 satisfied him that he had solved the problem of making a quiet "silencing device" (which problem counsel here insists was solved by appellant in 1933 by the construction and operation of exhibits 2, 7, and 13); and that after the tests he was satisfied that he had a device—"that was practical *except that it did not have the rate of flow that I wanted or is required to supply a direct connected flush valve water closet as they are now on the market,* as these closets require a rate of flow of from twenty to thirty gallons a minute, depending on the kind of bowl used, but the average is about twenty-five gallons a minute. *To make my new silencer of that capacity would make it almost too large, I thought, to be practical.* Besides this I wanted a closet bowl that could be successfully flushed and that would be acceptable for general use that would require a much smaller rate of flow, as such a closet could not only be supplied through my new silencer, but would open up the field of small one or two family homes for direct connected flush valves, and this class of buildings were practically no market for direct connected flush valves because of the added expense for the larger supply direct connected flush valves did require." ·(Italics ours.) The witness further stated that exhibit 16 was modified in accordance with the drawing (exhibit 18) for the purpose of securing a higher rate of flow therethrough; that the modification consisted of placing a sleeve on the outside of the body or plug located in the conduit, thus making two passageways, one between the sleeve and the plug and one between the sleeve and the inner wall of the conduit; and that although the device as modified permitted a greater rate of flow therethrough, it was not satisfactory because the passageway between the plug and the sleeve would fill up with extraneous matter, such as sand, etc. He further testified that after he had tested *exhibits 2, 7, and 13,* during the period from March 20, 1933 to May 1 of that year, the Sloan Valve Company attempted to secure a closet bowl and flush valve that would operate quietly in combination with a "line stop" at a low rate of flow, so that, as he put it, the Sloan Valve Company "could get into the one and two family homes  *  *  * with a direct connected flush valve"; that the company was unable to find a bowl that would operate successfully and, accordingly, investigated an entirely different type of bowl and flush valve (referred to in the record as an alternator bowl and flush valve) neither of which has any relation to the throttling device here involved; that, after spending considerable time and money attempting to construct an alternator valve for the alternator bowl, he finally, sometime in the summer of 1936, *decided to try to make up a bowl of regular design* that could be operated at a low rate of flow; and that, to that end, he employed the witness Frederick J. Collender. (The witness Collender stated that he was employed by the Sloan Valve Company on June 18, 1936, and that he worked on the alternator type of bowl for about a month, that is, until about July 18, 1936.) Sloan further testified that he made a silent flush valve that was satisfactory, and that the drawing for such a valve was made by Kocour on January 12, 1937 (Sloan exhibit 38). He did not state, however, when such a silent flush valve was made.

Exhibit 38 bears the stamp: "Received Jan. 27, 1938. Patent Dept. Sloan Valve Co."

Appellant Sloan further testified that after making the silent flush valve in accordance with exhibit 38 and a silent closet bowl that would operate at a low rate of flow, he filed his involved patent application which is for the throttling device involved in this interference.

It appears from the testimony of the witness Collender that on May 10, 1937, a test was made of a bowl which operated quietly at a low rate of flow from eleven to thirteen gallons per minute, as indicated on the test sheet (Sloan exhibit 43). He further stated that other bowls were secured on July 27, 1937; that they operated quietly at a low rate of flow ranging from ten to fifteen gallons per minute; that he secured fifty-eight bowls on February 16, 1938; that they were tested on February 23, 1938; and that each of them worked quietly at a rate of flow from eleven and one-half to thirteen gallons per minute.

Sloan's exhibit 40 is a test sheet, dated November 17, 1936, and shows a test of a closet bowl with "Housing Valve and new Screen Stop." Sloan's exhibit 41 is a test sheet, dated January 5, 1937, and indicates that a test was made of a closet bowl with "Spec. silent stop. (Screen in stop would clogg up)." Sloan's exhibit 42 consists of four test sheets, dated March 2, 3, 12, and 15, 1937, showing tests of closet bowls with housing valves. Apparently no throttling devices were used in those tests. Sloan's exhibit 43 consists of test sheets dated May 10, 12, 13, 17, 18, and 19, 1937. Although it appears from exhibit 43 that a regulating stop somewhat similar to exhibit 16 prior to its modification was used in a housing valve in the tests there recorded, there is nothing of record to establish that the regulating stop there described conformed to the counts in issue. Sloan's exhibit 44 is a test sheet, dated July 27, 1937, and shows the test of a closet bowl which, according to the exhibit, was "Tested with new stop per drg 7–16–37." It is further stated on that exhibit that "Bowl works so well at low rate of flow, down to 10 GPM [gallons per minute], that we believe we can reduce the stop crevice from .0175" to .015" and also the barrel dia. from 1¼" I. D. to 1⅛" I. D. (Best rate of flow for bowl = 12 GPM [gallons per minute].)" Following the quoted excerpts, appear the dimensions of the stop tested with the closet bowl, and the statement "Make new stop" with the dimensions to be used appearing thereunder.

(It may be said at this point that although the witness Russell testified that exhibit 44 was in his handwriting, he was not asked to identify either the drawing for the "new stop" or the "new stop" referred to on the exhibit as having been tested, and neither the drawing nor the stop was introduced in evidence. Whether the suggestion appearing on the exhibit "Make new stop" in conformity with the specified dimensions was ever carried out does not appear from the evidence of record.)

Although the "new stop," referred to on exhibit 44 as having been tested on July 27, 1937, would appear to be somewhat similar to the device (appellant's exhibit 16) prior to its modification, the dimensions of the "new stop" do not conform to the dimensions of exhibit 16. Apparently, the "new stop" worked satisfactorily with the new closet bowls obtained by the Sloan Valve Company a short time prior to the alleged test. However, that is the only evidence of the use of a throttling device which was at all similar to exhibit 16, subsequent to the tests of that exhibit alleged to have taken place on February 15, 1935. Furthermore, the throttling device, referred to on exhibit 44, was made not from the drawing (exhibit 15, which, together with exhibits 17 and 18, was received by the patent department of the Sloan Valve Company on March 9, 1937), but from a new drawing dated July 16, 1937, which, as hereinbefore noted, was not introduced in evidence. The date, July 16, 1937, is important because appellant's witness Russell testified that he had seen one of appellees' throttling devices sometime in March 1937, and that he had tested at least one of appellee's throttling devices at the Sloan Valve Company's plant in June 1937. Furthermore, on May 4, 1937, the Sloan Valve Company, per R. M. Nelson, vice president of the company, wrote to appellee Peterson (appellees' exhibit AK-10), stating that a Mr. Burke, who was employed by the Baltimore Valve Corporation of which appellee Peterson was president—" * * * showed us your silent stop, and as we have been giving the Binnall Patents #2,012,255, #2,024,270 and #2,026,506 on silencing considerable study, we looked them up again to see if there was a possible infringement. There isn't now, but Mr. Binnall has until December 31, 1937 to secure a reissue with broader claims which may cover your stop. In fact, he has already secured one reissue

last January, #20246, to cut us out of something we were using.

"If Mr. Binnall sees your silent stop, there is a possibility of his being able to get another reissue with claims which might shut you out. *Therefore, if we were you, we would withdraw your silent stop from the market until January 1, 1938, to keep from stirring up Mr. Binnall.*

*"Our selfish interest is that should your stop be successful, it will give us something to go to if we need it to compete with Speakman."* (Italics ours.)

On May 15, 1937, appellee Peterson replied (appellees' exhibit AK–11), stating that he was familiar with the Binnall patents referred to in appellees' exhibit AK–10; that he had been advised by his attorney that appellees' throttling device differed in principle from the Binnall disclosure; that appellees' device had never been put on the market as it was thought that it was salable only in combination with a flush valve; and that it did not appear possible to delay the issuance of appellees' patents until January 1, 1938.

On September 27, 1937, Mr. Nelson, on behalf of the Sloan Valve Company, wrote appellee Peterson (appellees' exhibit AK–13), stating, in substance, that, owing to vacations, the engineers of the Sloan Valve Company had not had the opportunity to give full consideration to appellees' device; and that pending such consideration *"we might be able to save some time by having you submit your proposition to us for the exclusive use of your device in connection with flush valves as your reasonableness in this respect will naturally have some effect on our action should we find that we are interested."* (Italics ours.) (In this connection, it may be said that Mr. Nelson, on behalf of the Sloan Valve Company, under date of August 17, 1937, acknowledged receipt of appellees' patents, appellees' exhibit AK–12, and stated that he would be glad to hear from Mr. Peterson.)

It will be recalled that Sloan's patent application, filed March 4, 1937, which we have held disclosed the involved invention, was for a flush valve in combination with a throttling device *designed to give a rate of flow between twenty and twenty-five gallons per minute,* whereas appellant's exhibit 16, claimed to have been conceived and reduced to practice in February 1935, *would not operate successfully at a rate of flow in excess of fifteen gallons per min-ute;* that appellant Sloan, who claims to have been trying since May 1933 to secure a flush valve and bowl that would operate quietly at a low rate of flow, was disappointed because his exhibit 16 would not operate successfully at a rate of flow higher than fifteen gallons per minute; that exhibit 16 was modified so that it would operate at a rate of flow higher than fifteen gallons per minute, but that when so modified it was not satisfactory; and that appellant Sloan testified that until he could design and construct a *flush valve and a closet bowl that would operate in combination with a throttling device having a low rate of flow,* such a throttling device was not practical. (As a matter of fact there is no evidence of record that a throttling device having exactly the same dimensions as exhibit 16 ever had any utility.)

It will also be recalled that the witness Swartz who stated that he made exhibit 16 from the drawing (exhibit 15) and the witnesses Krause and Kocour, who testified regarding exhibits 15 and 17 and the successful operation of exhibit 16, were not asked and did not state who placed the dates on exhibits 15 and 17, or when those dates were placed thereon.

The drawing appearing on exhibit 15, having been properly identified, is sufficient to establish conception by appellant of the involved invention. However, the date when that drawing was made is of vital importance, and it is strange indeed, particularly in view of the hereinbefore related facts and circumstances, that counsel for appellant, who, with meticulous care, examined appellant's witnesses as to the dates appearing on other of appellant's documentary exhibits, did not interrogate at least one of them regarding the date appearing on exhibit 15. Counsel for appellant was, of course, aware that it was essential that some evidence be submitted to establish that exhibit 15 was, in fact, made on the date which it bears—February 14, 1935. There being no such evidence, we are unable to hold that appellant is entitled to February 14, 1935, for conception of the involved invention.

What has been said regarding proof of the date when exhibit 15 was made applies also to the date when exhibits 17 and 18 were made, and as there is no evidence as to when those exhibits were made, we are unable to hold that appellant has established that they were, in fact, made on February 15, 1935, the date appearing

thereon. Furthermore, as the witnesses who testified regarding the construction of exhibit 16 and the testing of that device were obviously relying entirely upon the dates appearing on exhibits 15, 17, and 18 to fix the date when exhibit 16 was constructed and tested, we are unable to hold that appellant has established a successful reduction to practice of exhibit 16 on February 15, 1935, or at any other time. Nor are we able to hold that appellant has established conception or reduction to practice of a device, *having a low rate of flow*, that was in any way similar to exhibit 16 prior to July 27, 1937 (when the device disclosed on appellant's exhibit 44 was tested), which was subsequent to appellees' filing date (February 10, 1936) and was also subsequent to the time (March 1937) when appellant's witness Nelson had seen appellees' device and, on behalf of the Sloan Valve Company, had corresponded with appellee Peterson during May 1937 regarding such a device.

Although counsel for appellant has relied upon a device having a low rate of flow to establish conception and reduction to practice of the involved invention, the counts are not limited to such a device, but are sufficiently broad to cover a device having a high rate of flow.

Appellant having filed his earlier application March 4, 1937, in which he disclosed a device having a high rate of flow and which we have hereinbefore held disclosed the involved invention, he is entitled to that date for conception and constructive reduction to practice of the invention defined by the counts in issue. That date being subsequent to appellees' filing date (February 10, 1936), it is unnecessary that we consider the evidence introduced by appellees, which the tribunals of the Patent Office concurred in holding was sufficient to establish conception and reduction to practice of the involved invention as early as June, 1934.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

#### Appeals Nos. 4520 and 4521
#### Interference No. 75,857

These are cross-appeals wherein appellant William E. Sloan (in appeal No. 4520) has appealed from the decision of the Board of Appeals awarding priority of invention of the subject matter defined in counts 1 to 5, inclusive, to appellees Walker F. Peterson and Albert U. Walter, and appellants Walker F. Peterson and Albert U. Walter (in appeal No. 4521) have appealed from the decision of the Board of Appeals awarding priority of the subject matter defined in counts 6 and 7 to appellee William E. Sloan.

The interference is between the application of William E. Sloan, No. 194,633, filed March 8, 1938, and patent No. 2,089,-224, issued to Walker F. Peterson and Albert U. Walter, August 10, 1937, on an application filed April 20, 1936.

In appeal No. 4520, appellant William E. Sloan is the junior party, and as it appears to us that the subject matter of counts 1 to 4, inclusive, is disclosed in appellant's application filed March 4, 1937 (referred to in our decision in appeal No. 4519), which was copending with appellees' application which matured into their involved patent, and there being continuity between appellant's application of March 4, 1937, and his involved application, the burden was upon appellant to establish priority of the invention defined by those counts by a preponderance of the evidence. See authorities cited in our decision in appeal No. 4519.

At the time of the oral arguments in this court, counsel for appellant moved to dismiss appeal No. 4520 as to count 5. The motion will be granted.

In Peterson and Walter's appeal (No. 4521), involving counts 6 and 7, it is not contended here by appellee Sloan that his copending application, filed March 4, 1937, discloses the invention defined by those counts (and it clearly does not), and as Sloan's involved application was filed subsequent to the issuance of the Peterson and Walter patent, Sloan has the burden of establishing priority of the invention defined by those counts by evidence beyond a reasonable doubt. See authorities cited in our decision in appeal No. 4519.

Count 1, in appeal No. 4520, and count 6, in appeal No. 4521, are illustrative of the counts in issue. They read:

"1. A device for retarding the flow of a liquid with substantial quietness, comprising means providing a passage having opposed walls which are spaced apart a minimum distance of 0.015 inch and a maximum distance of 0.125 inch for a distance at least ten times the minimum distance

between the surfaces, at least one of said walls having a roughened surface consisting of elevations and depressions spaced apart a distance from 1/16 to 1/80 of an inch in the direction of flow along said surfaces."

"6. A device for retarding the flow of a liquid with substantial quietness, comprising means providing a passageway having opposed walls separated a distance between 0.015 and 0.125 inch, at least one said wall having ribs and grooves extending transversely to the direction of flow of liquid through the passage, the ribs being spaced apart from 1/16 to 1/80 of an inch and having substantially flat land portions having a width in excess of 0.005 inch and the grooves having a depth in excess of 0.005 inch."

The subject matter of counts 1 to 4, inclusive, of the involved interference differs from that defined in the counts in interference No. 75,856 (appeal No. 4519) in that the involved counts contain the limitation that at least one of the walls, that is, either the wall of the conduit or the wall of the body located therein (which walls provide the space for the flow of liquid) is provided, as stated in count 1 of the involved interference, with "a roughened surface consisting of elevations and depressions spaced apart a distance from 1/16 to 1/80 of an inch in the direction of flow along said surfaces." Counts 6 and 7, in appeal No. 4521, are further limited in that either the wall of the conduit or the wall of the body located in the conduit is provided with ribs and grooves extending transversely to the direction of the flow of liquid, the ribs "being spaced apart from 1/16 to 1/80 of an inch and *having substantially flat land portions* having a width in excess of 0.005 inch and the grooves having a depth in excess of 0.005 inch." (Italics ours.) It will be observed that counts 6 and 7 differ from counts 1 to 4, inclusive, in that, among other things, the ribs or threads in either the wall of the conduit or the wall of the body located in the conduit have "substantially flat land portions"; that is, the threads, instead of terminating in sharp ridges, are substantially flat.

As to all of the counts involved in this interference, counts 1 to 4, inclusive (in Sloan's appeal, No. 4520), and counts 6 and 7 (in Peterson and Walter's appeal, No. 4521), the party Sloan relies for conception and reduction to practice upon his drawing (exhibit 15), the throttling device (exhibit 16), the test sheet (exhibit 17) and the testimony of the witnesses Swartz, Krause, and Kocour, which evidence we have considered in interference No. 75,856 (Sloan's appeal No. 4519).

It appears, as held by the tribunals of the Patent Office, that exhibit 16, prior to its modification as shown on exhibit 18, conformed to all the limitations contained in the involved counts. The tribunals of the Patent Office concurred in holding that the party Sloan had established that he conceived the invention defined by the counts in this interference on February 14, 1935, and reduced it to practice on February 15 of that year by the successful operation of exhibit 16; that Peterson and Walter were entitled to a date as early as June, 1934, for reduction to practice of the invention defined in counts 1 to 4, inclusive, and, therefore, were entitled to priority of the invention defined by those counts.

As to counts 6 and 7 in appeal No. 4521, the tribunals of the Patent Office concurred in holding that although appellants Peterson and Walter had conceived the invention defined in those counts prior to February 15, 1935, they had failed to establish that they had reduced it to practice prior to *December of that year*, and that they had failed to establish that they were diligent in reducing the invention to practice at the time appellee Sloan entered the field, February 14, 1935, and, accordingly, awarded priority of the invention defined by those counts to appellee Sloan.

It is unnecessary that we again discuss the evidence relating to the disclosure in exhibit 15 and the alleged reduction to practice of the device (exhibit 16). We are of opinion, for the reasons stated in our decision in appeal No. 4519, that the party Sloan is not entitled to a date of conception or reduction to practice of the subject matter defined by counts 1 to 4, inclusive, in appeal No. 4520, and counts 6 and 7, in appeal No. 4521, prior to the filing date of Peterson and Walter (April 20, 1936), and that Peterson and Walter are entitled to an award of priority of the invention defined by the counts in issue.

In appellant Sloan's appeal (No. 4520), the appeal is dismissed as to count 5.

The decision of the Board of Appeals is modified, being affirmed as to counts 1

to 4, inclusive, in appeal No. 4520, and reversed as to counts 6 and 7 in appeal No. 4521.