27 C.C.P.A. (Patents)

## WALKER v. ALTORFER.

### Patent Appeal No. 4313.

Court of Customs and Patent Appeals.

April 29, 1940.

Donald W. Farrington, of Cleveland, Ohio, and Watts T. Estabrook, of Washington, D. C., for appellant.

Joseph H. Milans, of Washington, D. C. (Lionel V. Tefft, of Chicago, Ill., and Calvin H. Milans, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences in awarding priority of invention of a design for an ironing machine cabinet to the junior party Altorfer. The interference was declared between the senior party Walker's patent No. Des. 96,149, dated July 2, 1935, issued upon an application filed April 10, 1935, and an application filed October 12, 1935, by the junior party A. W. Altorfer.

The essential elements of the involved design rest in the cabinet which incloses the ironing machinery being in the form of a box-like cover or top portion superimposed upon a metal stand with paneled upright end portions referred to as legs, the so-called leg at each end of the cabinet being in the form of a panel with curved edge portions. The cabinet of each party is provided with short ornamental corrugations, those of Walker being vertically arranged in groups of three at the front and rear of the cover and at the ends of the upright supports, and those of Altorfer being horizontally arranged in groups of two about the front and ends of the cover and at the base of the upright supports. The ornamental corrugations are quite similar in the design of each party.

Altorfer in his preliminary statement alleged that he conceived the invention on or about August 1, 1934; that he first made drawings of the same on August 8, 1934, and a written description of it on July 1, 1935; that he first explained his invention to others August 1, 1934, and that he first embodied the invention in a full-sized device August 15, 1934.

The party Walker in his preliminary statement alleged a date of first drawing of November 7, 1933, a description of the invention to others on the same date and a reduction to practice on November 10, 1933.

Both parties took testimony in an effort to support the said claimed dates.

Since the application of Altorfer was filed subsequent to the issuance to Walker of said patent, the burden was upon Altorfer to prove beyond a reasonable doubt that he was the first inventor within the meaning of the law.

The tribunals below awarded to Walker a date for actual reduction to practice of November 13, 1934. They concurred in holding that he was the first to conceive. These two findings are not seriously questioned here. The tribunals also held that the Altorfer proof showed that while he was last to conceive, he was first to reduce to practice—as early as October 22, 1934—and that Walker had not shown diligence at and immediately prior to Altorfer's entering the field on August 8, 1934, to the time of Walker's actual reduction to practice on November 13, 1934.

The Examiner of Interferences found that the proofs of Altorfer established his case beyond a reasonable doubt. The Board of Appeals originally held that he had established his case by a preponder-

ance of the evidence and subsequently, in a modified decision, after Walker had petitioned the Commissioner of Patents for a ruling that the case be reopened and that the board reconsider its decision, held that the Altorfer proofs established his case beyond a reasonable doubt.

We find it unnecessary for us to discuss or consider the Walker testimony. The Examiner of Interferences gave the Altorfer proof careful consideration and stated it in considerable detail. In view of our conclusion as to the effect to be given to the Altorfer testimony, we think it desirable to here set out the important parts of the same.

Alpheus W. Altorfer, the appellee, president of Altorfer Bros. Co., of Peoria, Illinois, manufacturer of washing machines and ironing machines; his brother, H. W. Altorfer, vice-president of said company; William A. Moffatt, who had charge of the sheet metal and assembly department of the company; and John A. Castricone, an engineer employed by said company, all testified in regard to the various drawings which were alleged to have been made under the direction of the appellee and also testified with respect to the construction in the Altorfer plant of various structures alleged to embody the essentials of the invention in controversy. Much of the testimony need not be stated here. It shows that in the spring and summer of 1934 appellee became interested in getting out a new design for an ironing cabinet which would embody the desirable features of the design in issue. Various exhibits in the form of drawings to show different efforts that were made in securing a satisfactory design were introduced in evidence and it is shown by the record that drawings, dated June 29, 1934, of a design were made by witness Castricone (Exhibits 3A, B and C)· which show a conception of the stand portion of the design in issue, and that on August 8, 1934, another drawing (Exhibit 4) was made by Castricone showing the top and stand combined. Without describing the drawings in detail, we think it appears that as early as August 8, 1934, drawings were completed which disclose the cabinet design in issue.

Moffatt testified that he made a table like that shown by Exhibits 3A, B and C by hand which was finished by the middle of July. Castricone corroborates this testimony except that he says the table was finished the first week of July. The testimony of A. W. Altorfer is to the same effect as that of Castricone. H. W. Altorfer testified that the stand was worked on immediately after the sketches were made, and that when the stand was completed Moffatt made a top for it in August, 1934. Castricone testified that tops like that shown in Exhibit 4 were made around September or October 1934. A. W. Altorfer fixes the date of making the tops immediately after Exhibit 4 was made— August 8, 1934. H. W. Altorfer testified that the stand and upper section and the top for the upper section were completed as an entire assembly in the latter part of August, 1934.

There is testimony that machines with cabinets corresponding to the invention in issue were made in the Altorfer plant and shipped to Chicago to be exhibited at the Household Show in January, 1935. It is shown that these machines were finished the last part of December, 1934. This fact is not disputed by Walker.

H. W. Altorfer testified that the first dies for making the metal cabinets were started in October of 1934 and completed in February, 1935, "prior to the production of the first production machine."

It also is stated in the testimony of H. W. Altorfer that the tops were completed prior to the date of the drawing, Exhibit 14—October 22, 1934—and that the ironer embodying the design was also assembled at least by that time.

It is around this Exhibit 14 that much of the controversy in this case pivots. This drawing discloses the cabinet in issue, together with a pivotal or swinging characteristic of the top of the cabinet. The exhibit bears the notation "Altorfer Bro. Co. Peoria Ill. Oct. 22—1934" and the signatures "A. W. Altorfer" and "John A. Castricone." A. W. Altorfer and Castricone both testified to their signatures and that they were placed upon the exhibit on October 22, 1934, in the Altorfer place of business in Peoria.

Walker showed by an expert on documents and handwriting that there had been some changes or additions made to said notations on said document but the witness was not able to say definitely whether they were made subsequent to October 22, 1934, or on that date. A. W. Altorfer freely admits and so do other witnesses that all the notations except the signature of Altorfer were first made with lead pencil; that

when they were placed upon the document Altorfer signed his name with pen and ink, and that at that time, after Altorfer had used the ink, Castricone traced the lead pencil notations with pen. The document on its face shows that the lead pencil writing has been traced with ink.

Other documents, not as important as this one, also show certain erasures or claimed corrections concerning which appellant has here . made complaint. The tribunals below held that Altorfer had satisfactorily explained the criticized portions of the documents.

Now, at the outset it may be observed that the critical question presented here is whether the testimony of said witnesses and the documentary evidence introduced established beyond a reasonable doubt that Altorfer had actually reduced to practice the invention on the date claimed or on some date prior to November 13, 1934, when Walker reduced his invention to practice.

■ Appellee and his witnesses unquestionably are men of good character. Their testimony, while at points somewhat indefinite, is for the most part free from any inconsistencies or contradictory features. The weakest feature of Altorfer's case is that the cabinet made as early as October 22, 1934, which the tribunals held to be the embodiment of the invention at issue could not be found and was not produced in evidence. In order for Altorfer to win priority here it would be necessary for us to conclude that the testimony hereinbefore set out met the requirements of the law in this kind of proceeding. It must be remembered that Altorfer's testimony was taken in the summer of 1937 and that the alleged happenings took place some three years prior thereto. It is our view that the Altorfer record as a whole does not show that he met his burden of proving his case beyond a reasonable doubt, and we say this without suggesting that any witness intentionally stated an untruth.

■ It is well settled that an inventor who makes claim to an invention of another who has obtained a patent therefor must, before he can be awarded priority, prove his case by such clear and convincing evidence as to remove all reasonable doubt that the patentee was not the first inventor. The courts, for various reasons which involve the fundamental basis of the patent system, have, with but few excep-

tions, required that proof, submitted under such circumstances as are at bar, must be such as will stand the closest scrutiny and leave 'no other conclusion reasonably possible except that the claimant was in fact the first inventor.

The rule is very different when applied to proof required as between applicants whose applications are copending, and in frankness we think it proper to say that if appellee was·only required to prove his case by a preponderance of the evidence we might be justified upon the instant record in arriving at the conclusion at which the board first arrived. But, in view of the fact that the claim for the reduction to practice of Altorfer must necessarily depend in many essential respects upon the oral testimony of the two officers of the company and the two employees thereof, we think it does not meet the requirements of the law.

■ It is unnecessary here to point out all the elements of weakness of the Altorfer record. Certainly the admission that the documentary exhibits, upon which much of the oral proof concerning reduction to practice depends, have been changed or altered, regardless of any explanation made concerning the same, is an element of weakness. In other words, documents which are not subject to such criticism would ordinarily be given more weight than those which by erasures, changes, modifications, or alterations require explanation. In such cases too much is left to the fallible memory of witnesses—too great an opportunity is afforded after the inventor has seen his adversary obtain a patent for him and his witnesses to remember things in the light of their interest and the necessities of the moment.

■ It has been the settled policy of the courts to apply the severest test possible to the testimony of one who seeks to obtain the monopoly in an invention which has been awarded to another in the form of an issued patent. In Deering v. Winona Harvester Works, 155 U.S. 286, 301, 15 S.Ct. 118, 124, 39 L.Ed. 153, the Supreme Court of the United States· said: " * * * anticipations [of patents are] to be proven by evidence so cogent as to leave no reasonable doubt in the mind of the court that the transaction occurred substantially as stated."

It must be noted here that appellee claims to have completed his invention in the fall

of 1934. He never asked for a patent until after he presumably had seen his adversary's patent. Then, more than one year after his claimed reduction to practice, he filed his application and sought interference with the appellee.

In the Barbed Wire Patent case, Washburn & Moen Manufacturing Company v. Beat 'Em All Barbed Wire Company et al., 143 U.S. 275, 284, 12 S.Ct. 443, 447, 36 L. Ed. 154, the Supreme Court of the United States said: " * * * We have now to deal with certain unpatented devices, claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny. Indeed, the frequency with which testimony is tortured, or fabricated outright, to build up the defense of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer. The doctrine was laid down by this court in Coffin v. Ogden, 18 Wall. 120, 124 [21 L.Ed. 821], that 'the burden of proof rests upon him [the defendant], and every reasonable doubt should be resolved against him. If the thing were embryotic or inchoate; if it rested in speculation or experiment; if the process pursued for its development had failed to reach the point of consummation,—it cannot avail to defeat a patent founded upon a discovery or invention which was completed, while in the other case there was only progress, however near that progress may have approximated to the end in view.' * * *"

In Deering v. Winona Harvester Works, supra, the court said: " * * * Taking this evidence together, it falls far short of establishing an anticipation with that certainty which the law requires. As we have had occasion before to observe, oral testimony, unsupported by patents or exhibits, tending to show prior use of a device regularly patented, is, in the nature of the case, open to grave suspicion. * * *"

In speaking of this character of testimony, the Supreme Court in T. H. Symington Company v. National Malleable Castings Company et al., 250 U.S. 383, 386, 39 S. Ct. 542, 543, 63 L.Ed. 1045, said: "This court has pointed out that oral testimony tending to show prior invention as against existing letters patent is, in the absence of models, drawings, or kindred evidence, open to grave suspicion, particularly if the testimony be taken after the lapse of years from the time of the alleged invention. * * * And it has said: 'A conception of the mind is not an invention until represented in some physical form, and unsuccessful experiments or projects, abandoned by the inventor, are equally destitute of that character.' Clark Thread Co. v. Willimantic Linen Co., 140 U.S. 481, 489, 11 S. Ct. 846, 849 (35 L.Ed. 521)."

In Diamond Patent Co. v. S. E. Carr Co., 217 F. 400, 402, Judge Gilbert, speaking for the Circuit Court of Appeals, Ninth Circuit, in referring to oral evidence intending to establish prior use and thus invalidate a patent, said: " * * * Under the rule established by these decisions, we are required to view with caution and careful scrutiny evidence which is introduced to show a prior use that destroys the pecuniary value of a patent, which has met with commercial success and has been of value to the community."

As to the scrutiny to be given to oral evidence taken some time after the happening of the events testified to, see, also, Langevin v. Nicolson, 110 F.2d 687, 27 C. C.P.A., Patents, ―― (decided April 1, 1940).

Concerning the well-established law relating to the burden resting upon one who by his application seeks to claim the invention of an issued patent, the Court of Appeals of the District of Columbia (now the

United States Court of Appeals for the District of Columbia), our predecessor in our present patent jurisdiction, made this significant statement in Sharer v. Mc-Henry, 19 App.D.C. 158, 162: "This rule in respect of the conclusive weight of evidence necessary to overcome the priority of invention evidenced by a regular and formal patent, has been long established and our observation of its operation in general has had no tendency to incline us towards laxity in its application."

See, also, McCormick et al. v. Plumstead, 94 F.2d 999, 25 C.C.P.A., Patents, 925, and Schwartz v. Graenz, 81 F.2d 767, 23 C.C.P.A., Patents, 883.

Many other cases involving prior use of inventions in equity cases where the character of evidence such as is at bar was severely criticized might be cited, but the authorities as a whole on this subject are in accord, and we think fully justify our conclusion that the Altorfer proof in the instant case fails to meet the burden which the law imposes upon him. This being our conclusion, after much deliberation, it follows that no other question presented or discussed need be considered by us.

We conclude that the Board of Appeals erred in affirming the decision of the Examiner of Interferences in awarding priority of the invention in issue to the junior party Altorfer, and its decision so doing is reversed.

Reversed.