John W. SELLNER, Appellant,

v.

Harry SOLLOWAY and Michael Goodman, Appellees.

Patent Appeal No. 6437.

United States Court of Customs and Patent Appeals.

May 22, 1959.

I. Louis Wolk, Los Angeles, Cal. (Ben Cohen, Washington, D. C., of counsel), for appellant.

Hamer H. Jamieson, Los Angeles, Cal. (Leo A. Rosetta, Washington, D. C., of counsel), for appellees.

Before WORLEY, Acting Chief Judge, and RICH, MARTIN and JOHNSON (retired), Associate Judges.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the subject matter of count 1 of Interference No. 88,049 to the junior party, Solloway and Goodman.

The invention is a combination chair and exerciser comprising a body-supporting frame of seat and back portions pivotally connected with means for sup-

porting the frame comprising two generally U-shaped members located at each side of said frame, with the upper ends of the legs of the members pivotally connected to the seat and back portions respectively. The arrangement is such that the pivotal connections between the portions of the frame may lie below the lines joining the connections with U-shaped member, thus forming a chair, or above such lines to form an inverted V-shaped support so that the user's body will be bent backwardly with respect to his legs. In the intermediate position, with the pivotal connections in alignment, a flat supporting surface is provided.

When the device is used as an exerciser it moves from one to another of the positions above described, in accordance with the position assumed by the body of the person performing the exercises. The U-shaped members are sufficiently resilient to permit the required movement of the body-supporting portions.

The count reads:

"1. In combination, a body supporting frame consisting of two sections pivotally interconnected at the center of the frame, studs downwardly projecting from the side edges of the two sections intermediate the ends thereof, and two U-shaped supporting brackets, each bracket including a base member and legs rising from the end thereof, the upper ends of the legs of each bracket being pivotally mounted on the studs at one side edge of the frame, the two frame sections having freedom of relative swinging movement on their pivotal interconnection and on the pivotal connection with the upper ends of the legs."

 Appellant is involved in the interference on patent No. 2,724,428, granted November 22, 1955, on an application filed May 20, 1954, while appellees' application was filed January 30, 1956, after issuance of appellant's patent. However, appellees' application is a continuation, so far as the subject matter of

count 1 is concerned, of an application filed April 4, 1955, and was thus copending with the application on which appellant's patent was granted. Accordingly, appellees have the burden of proving priority by only a preponderance of the evidence rather than beyond a reasonable doubt. Sloan v. Peterson, 129 F.2d 330, 29 CCPA 1055.

Appellant did not take testimony and is accordingly restricted to his filing date of May 20, 1954, for conception and reduction to practice.

Appellees introduced as their Exhibit A a device so constructed as to satisfy the requirements of the count. Two witnesses, Mrs. Irene Barber and Alexander F. Borisoff, testified that they saw Exhibit A at a birthday party for Solloway February 23, 1950. While the witnesses did not remember every structural detail of the device they saw at that time, we agree with the board that their testimony is sufficient to establish that what they saw was Exhibit A. The testimony of Borisoff is especially convincing on that point since he stated that he saw the chair at Solloway's apartment many times between February 1950 and some time in 1952 when Solloway moved to a house of his own. Appellees, therefore, have established conception of the invention at least as early as February 23, 1950, and were thus the first to conceive.

The board held that Exhibit A was sufficiently tested on February 23, 1950, to effect a reduction to practice. If the evidence of record supports that holding then appellees were properly awarded priority as being the first to conceive and reduce to practice.

The board appears to rely rather heavily on the following testimony of Mrs. Barber and Mr. Borisoff.

Mrs. Barber stated:

" * * * it fit into the small of my back. I could lean right back on it and be very comfortable. And as near as I remember I said something about I would love to be the first customer when you go into production because it does the trick * *."

Mr. Borisoff stated:

" * * * everybody tried this chair and it was lots of fun. So then I tried, they asked me to—I was, in the beginning I saw this chair, I thought the chair wouldn't hold me. So when I tried this chair I noticed the chair is wobbly and I mentioned to Harry Solloway, so he says, 'This only the first chair we accomplish, we are going to make experimental things in future about this chair so we will make probably heavier and stronger chair, but this is the first accomplishment.' Later on Miss Barber come in, and she tried this chair; it was lots of fun and lots of laugh. That is what I remember."

Moreover, from our own examination of the record, we note that while Mrs. Barber did not in so many words expressly state on direct examination that she used the device as an exerciser, she testified as follows on cross-examination.

"Well, as I remember I used those corners for my heels. That is how I know that the corners are not there. My heels would fit into that part and by that you could propel yourself up or down. And as far as construction, I am not an engineer. I know it stands on two legs, and if you push your heels you will go up and down on it which is something that I would remember. That is all the construction that I would remember."

The most reasonable interpretation of the quoted testimony is that the witness actually tried using the device by propelling herself up and down, or in other words, exercising with it, in February 1950; and since she further testified that she told Solloway that the chair "does the trick" and that she would like to be his first customer, it is evident that she regarded the results of her tests as satisfactory.

Borisoff's testimony as to his testing of the chair is generally similar to that of Mrs. Barber. While he makes no express reference to exercising as such, his statement that "everybody tried this chair and it was lots of fun" suggests that the device was used as an exerciser since merely sitting in it could scarcely be regarded as fun. Both Borisoff and Mrs. Barber apparently appreciated the fact that the device was an exerciser and it is reasonable to suppose that when they testified that they tried it, they meant they tried it for that purpose. We are of the opinion, therefore, that the board correctly held that Exhibit A was satisfactorily tested in February 1950.

 It is true, as appellant points out, that neither Mrs. Barber nor Borisoff was skilled in mechanical matters. However, the device involved and the manner in which it is intended to operate are comparatively simple. While we agree with appellant that the testimony is not as detailed and specific in some respects as might be desired, appellant's cross-examination of the witnesses did not shake or weaken their testimony. The question as to whether the evidence submitted is sufficient to establish that an invention has been reduced to practice is one which must be decided largely on the basis of the particular circumstances of the case under consideration. Here, for the reasons set forth above, we are unable to conclude that the board erred in accepting the evidence as sufficient for that purpose.

██ Appellant emphasizes that there was a delay of several years after the 1950 tests before appellees' application was filed, and that during that period appellees continued to experiment with various forms of exercisers. Although such circumstances might tend to indicate that the tests may not have been satisfactory and may be important where the nature or results of the tests are otherwise doubtful, where, as here, the evidence sufficiently establishes satisfactory tests with no evidence of concealment or suppression, or stimulation by knowledge of another party's activity, mere delay and further experimentation does not require a holding that there was no reduction to practice. Hedens-

koog v. Backus, 48 F.2d 408, 18 CCPA 1065.

Appellant alleges that appellees concealed or suppressed their invention and have therefore forfeited their right to an award of priority, citing Mason v. Hepburn, 13 App.D.C. 86. Such forfeiture, however, results only from suppression or concealment until stimulated into activity by knowledge of a rival's activity. Hedenskoog v. Backus, supra. As pointed out above, there is no evidence of any deliberate suppression or concealment of the invention by appellees here.

Full consideration has been given appellant's contention but we find no sound reason to disturb the decision of the Board of Patent Interferences.

Affirmed.

JOHNSON, Judge, Retired, recalled to participate.