Richard C. PRICE, Appellant,

v.

Dale R. SYMSEK, et al., Appellee.

No. 91–1509.

United States Court of Appeals,
Federal Circuit.

March 11, 1993.

Lynn J. Alstadt, Buchanan Ingersoll, P.C., Pittsburgh, PA, argued, for appellant. With him on the brief, was Michael L. Dever.

Donald M. Satina, USX Corp., Pittsburgh, PA, submitted, for appellee.

Before NIES, Chief Judge, ARCHER and MAYER, Circuit Judges.

NIES, Chief Judge.

Richard C. Price appeals from the August 7, 1991, decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences, awarding the subject matter of the count in Patent Interference No. 102,101 to Dale R. Symsek and Nancy P. Regelin (collectively "Symsek"). The board's decision is vacated and the case is remanded to the board.

## I.

## BACKGROUND

On February 1, 1985, Symsek and Regelin, two engineers for the American Bridge Division of the United States Steel Corporation, filed a patent application entitled "Variable Temperature Waste Heat Recovery System." This application issued as United States Patent No. 4,628,869 (the '869 patent) on December 16, 1986, and was assigned to U.S. Steel. On December 11, 1987, almost one year after issuance of the '869 patent, Price filed United States Patent Application Serial No. 07/131,859, containing claims copied from the '869 patent to provoke the subject interference.

The invention defined in the count is a system for recovering and utilizing heat which is normally wasted from a process heater. In a typical closed-loop heat recovery system, a thermal fluid is heated in a first heat exchanger by hot exhaust gas as the gas leaves a process heater. The heated thermal fluid then preheats combustion gases in a second heat exchanger before the combustion gases enter the burners of the process heater, thus increasing the efficiency of the burners. Since many process heaters, such as blast furnaces, operate cyclically, the temperature of the hot exhaust gas varies considerably over time, thereby causing a wide deviation in the temperature of the heated thermal fluid. A large variance in the temperature of the heated thermal fluid decreases the efficiency of the heat recovery system and may cause degradation of the second heat exchanger.

The invention of the count addresses this problem by providing:

A waste gas recovery system for use with a process heater installation in which exhaust gases discharged from said installation are variable during each operating cycle, said system including a closed-loop heat transfer circuit through which a heat transfer liquid is circulated and having a first heat exchanger for extracting heat from said exhaust gases, a second heat exchanger adapted to pass a recipient fluid in heat transfer relation with said heat transfer liquid, and a reservoir for storing the heat transfer liquid circulated through said circuit, the improvement comprising *said reservoir being operatively disposed in said heat transfer circuit intermediate the downstream end of said first heat exchanger and the upstream end of said second heat exchanger* whereby heat transfer liquid heated in said first heat exchanger is passed to said reservoir prior to being passed to said heat exchanger and *said reservoir containing an amount of heat transfer liquid in excess of that contained in the remainder of said heat transfer circuit* whereby variations in the temperature of said heat transfer liquid exiting said first heat exchanger are damped prior to entry of said heat transfer liquid into said second heat exchanger.

(Emphasis added.) The improvement portion of the count requires that: (1) a reservoir be located between the first and second heat exchangers (the hot side), and (2) the reservoir contain more heat transfer fluid than that contained in the remainder of the heat transfer circuit. These reservoir location and size requirements act to dampen the temperature variation of the heat transfer fluid before the fluid enters

the second heat exchanger, thereby creating a more efficient and stable heat recovery system.

Before the board, Price submitted affidavit and deposition evidence to prove that he conceived the invention before Symsek and that Symsek derived the waste gas recovery system of the count from him. Alternatively, Price sought to establish that he was entitled to an award of priority of invention because he conceived the system prior to any conception date asserted by Symsek and he was reasonably diligent in reducing the system to practice.

The board awarded the invention of the count to Symsek. In reaching this decision, the board required Price to prove the necessary elements of either theory, derivation or priority, *beyond a reasonable doubt.*

Price appealed the board's decision to this court, asserting, *inter alia,* that the board legally erred by imposing upon him the burden of showing prior conception, communication, and diligent reduction to practice according to the criminal standard of *beyond a reasonable doubt.* Further, Price asserts that the board improperly refused to consider documentary evidence even though the document's existence as of the relevant date was corroborated by a witness.

## II.

## DERIVATION AND PRIORITY

■ Although derivation and priority of invention are akin in that both focus on inventorship and both may be resolved by the board in an interference action, they are distinct concepts. *Applegate v. Scherer,* 332 F.2d 571, 573 & n. 1, 141 USPQ 796, 798 & n. 1 (CCPA 1964). A claim that a patentee derived an invention addresses originality—who invented the subject matter of the count? *Hedgewick v. Akers,* 497 F.2d 905, 907, 182 USPQ 167, 168 (CCPA 1974). Under this attack on a patent or patent application, the proponent asserts that the patentee did not "invent" the sub-

ject matter of the count because the patentee derived the invention from another. *Davis v. Reddy,* 620 F.2d 885, 882 n. 2, 205 USPQ 1065, 1068 n. 2 (CCPA 1980). To prove derivation in an interference proceeding, the person attacking the patent must establish prior conception of the claimed subject matter and communication of the conception to the adverse claimant. *Hedgewick,* 497 F.2d at 908, 182 USPQ at 169; *Mead v. McKirnan,* 585 F.2d 504, 507, 199 USPQ 513, 515 (CCPA 1978). While the ultimate question of whether a patentee derived an invention from another is one of fact, *Hedgewick,* 497 F.2d at 908, 182 USPQ at 169; *Beall v. Ormsby,* 154 F.2d 663, 667, 69 USPQ 314, 318 (CCPA 1946), the determination of whether there was a prior conception is a question of law, *Fiers v. Sugano,* 984 F.2d 1164, 1168–69, 25 USPQ2d 1601, 1604 (Fed.Cir.1993), which is based upon subsidiary factual findings.

■ Contrasted to derivation, a claim to priority of invention does not question whether the patentee "invented" the subject matter of the count, but instead focuses on which party *first* invented the subject matter of the count. Priority goes to the first party to reduce an invention to practice unless the other party can show that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice.[1] *Lutzker v. Plet,* 843 F.2d 1364, 1366, 6 USPQ2d 1370, 1371 (Fed.Cir.1988). Priority is a question of law which is to be determined based upon underlying factual determinations. *See Brokaw v. Vogel,* 429 F.2d 476, 480, 166 USPQ 428, 431 (CCPA 1970).

## III.

## BURDEN OF PROOF

■ Before reaching the merits of Price's appeal, we must first address the question of Price's burden of proof before the board. Price argues that the board improperly required him to prove the facts required to establish conception, communi-

---

1. Price does not assert that he reduced his invention to practice prior to Symsek's date of constructive reduction to practice, February 1, 1985.

cation, and diligent reduction to practice beyond a reasonable doubt. Price argues that the correct standard is the "clear and convincing evidence" standard. We agree.

The issue of the quantum of proof required to establish priority in an interference with an issued patent, is one of first impression in the Federal Circuit. As articulated in *California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater*, 454 U.S. 90, 102 S.Ct. 172, 70 L.Ed.2d 262 (1981):

> Three standards of proof are generally recognized, ranging from the "preponderance of the evidence" standard employed in most civil cases, to the "clear and convincing" standard reserved to protect particularly important interests in a limited number of civil cases, to the requirement that guilt be proved "beyond a reasonable doubt" in a criminal prosecution. See *Addington v. Texas*, 441 U.S. 418, 423–424 [99 S.Ct. 1804, 1808, 60 L.Ed.2d 323] (1979). This Court has, on several occasions, held that the "clear and convincing" standard or one of its variants is the appropriate standard of proof in a particular civil case. See *Addington v. Texas, supra,* at 431 [99 S.Ct. at 1812] (civil commitment); *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 52 [91 S.Ct. 1811, 1824, 29 L.Ed.2d 296] (1971) (libel); *Woodby v. INS*, 385 U.S. 276, 285 [87 S.Ct. 483, 488, 17 L.Ed.2d 362] (1966) (deportation); *Chaunt v. United States*, 364 U.S. 350, 353 [81 S.Ct. 147, 149, 5 L.Ed.2d 120] (1960) (denaturalization). However, the Court has never required the "beyond a reasonable doubt" standard to be applied in a civil case. "This unique standard of proof, not prescribed or defined in the Constitution, is regarded as a critical part of the 'moral force of the criminal law,' *In re Winship*, 397 U.S. [358], at 364 [90 S.Ct. 1068 at 1072, 25 L.Ed.2d 368 (1970)], and we should hesitate to apply it too broadly or casually in non-criminal cases." *Addington v. Texas, supra* [441 U.S.], at 428 [99 S.Ct. at 1810].

*Id.*, 454 U.S. at 93, 102 S.Ct. at 173–74. A requirement of proof by clear and convincing evidence imposes a heavier burden upon a litigant than that imposed by requiring proof by preponderant evidence but a somewhat lighter burden than that imposed by requiring proof beyond a reasonable doubt. *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463, 7 USPQ2d 1325, 1327 (Fed.Cir.1988). "Clear and convincing" evidence has been described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is "highly probable." *Id.* (citing *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 2437, 81 L.Ed.2d 247 (1983)).

Respecting proof of facts establishing patent invalidity in general, the Supreme Court made the following analysis in *Radio Corp. of Am. v. Radio Eng'g Lab., Inc.*, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163 (1934):

> A patent regularly issued, and even more obviously a patent issued after a hearing of all the rival claimants, is presumed to be valid until the presumption has been overcome by convincing evidence of error. The force of that presumption has found varying expression in this and other courts. Sometimes it is said that in a suit for infringement, when the defense is a prior invention, "the burden of proof to make good this defense" is "upon the party setting it up," and "every reasonable doubt should be resolved against him." *Cantrell v. Wallick*, 117 U.S. 689, 695, 696 [6 S.Ct. 970, 974, 29 L.Ed. 1017]; *Coffin v. Ogden*, 18 Wall. 120, 124 [21 L.Ed. 821]; *The Barbed Wire Patent*, 143 U.S. 275, 285 [12 S.Ct. 443, 447, 36 L.Ed. 154]; *Washburn v. Gould*, 3 Story 122, 142; *H.J. Heinz Co. v. Cohn*, 207 Fed. 547, 554; *Detroit Motor Appliance Co. v. Burke*, 4 F.(2d) 118, 122; *Wilson & Willard Mfg. Co. v. Bole*, 227 Fed. 607, 609; *Stoody Co. v. Mills Alloys, Inc.*, 67 F.(2d) 807, 809; cf. *Morgan v. Daniels*, 153 U.S. 120, 123 [14 S.Ct. 772, 773, 38 L.Ed. 657]. Again it is said that "the presumption of the validity of the patent is such that the defense of invention by another must be established by the clearest proof—perhaps beyond a reasonable

doubt." *Austin Machinery Co. v. Buckeye Traction Ditcher Co.,* 13 F.(2d) 697, 700. *The context suggests that in these and like phrases the courts were not defining a standard in terms of scientific accuracy or literal precision, but were offering counsel and suggestion to guide the course of judgment. Through all the verbal variances, however, there runs this common core of thought and truth, that one otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance.* Cf. *Philippine Sugar E.D. v. Philippine Islands,* 247 U.S. 385, 391 [38 S.Ct. 513, 515, 62 L.Ed. 1177].... [T]he requirement of evidence sufficient to carry conviction to the mind is little more than another form of words for the requirement that the presumption of validity shall prevail against strangers as well as parties unless the countervailing evidence is clear and satisfactory.

*Id.* 293 U.S. at 7–9, 55 S.Ct. at 930–31 (emphasis added).

Reviewing the precedent of our two predecessor courts, numerous early decisions of the Court of Customs and Patent Appeals spoke of proof "beyond a reasonable doubt" in interference cases involving a patent and an application.[2] However, these decisions were rendered prior to the Supreme Court's explanation of the difference between "clear and convincing" proof and proof "beyond a reasonable doubt" and its admonition against imposing a criminal standard in a civil case. In line with these Supreme Court decisions, the Court of Customs and Patent Appeals rephrased the evidentiary standard, stating that a party who copies claims from a patent to provoke an interference "is required to establish a

prior date of invention by *clear and convincing evidence.*" *In re Reuter,* 670 F.2d 1015, 1021 n. 9, 210 USPQ 249, 255 n. 9 (CCPA 1981) (emphasis added). We also note that the "clear and convincing" standard had earlier been applied in the Court of Claims respecting the government's defense of derivation in *Amax Fly Ash Corp. v. United States,* 514 F.2d 1041, 1047–48, 206 Ct.Cl. 756, 182 USPQ 210, 215 (1975) (Trial Judge's decision adopted by the Court of Claims at 185 USPQ 437, 438). Further, the "clear and convincing evidence" standard has uniformly been invoked in resolving the issues of priority and derivation in infringement suits between private parties in this court. *See, e.g., Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1559–60 & 1562–64, 224 USPQ 259, 262–63 & 265–66 (Fed.Cir.1984). Additionally, one of our predecessor courts has said, "[W]e see no reason why a rule relating to the weight of evidence should be applied in an interference case, where priority is involved, different from that applied in an infringement proceeding." *See Langevin v. Nicolson,* 110 F.2d 687, 694, 45 USPQ 92, 99 (CCPA 1940).

■ The standard of proof utilized in an adjudication reflects a very fundamental assessment of the comparative social costs, or "disutility," of erroneous factual determinations. *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). Justice Harlan's well known "social disutility" analysis recognizes (1) the factfinder can rarely, if ever, acquire unassailably accurate knowledge of what happened—a belief of what probably happened is generally the best that can be achieved, and (2) the factfinder, even after the most diligent of ef-

2. *See Horwath v. Lee,* 564 F.2d 948, 949 n. 2, 195 USPQ 701, 703 n. 2 (CCPA 1977); *Silvestri v. Grant,* 496 F.2d 593, 595 n. 5, 181 USPQ 706, 707 n. 5 (CCPA 1974), *cert. denied,* 420 U.S. 928, 95 S.Ct. 1126, 43 L.Ed.2d 399 (1975); *Wolter v. Belicka,* 409 F.2d 255, 256 n. 1, 161 USPQ 335, 335 n. 1 (CCPA 1969); *Fang v. Hankins,* 399 F.2d 262, 263, 158 USPQ 345, 346 (CCPA 1968); *Paivinen v. Sands,* 399 F.2d 697, 698, 158 USPQ 602, 603 (CCPA 1968); *Paivinen v. Sands,* 339 F.2d 217, 220, 144 USPQ 1, 4 (CCPA 1964); *Sellner v. Solloway,* 267 F.2d 321, 322, 122 USPQ 16, 18 (CCPA 1959); *Conner v. Joris,* 241 F.2d 944, 946, 113 USPQ 56, 58 (CCPA 1957); *Sloan v. Peterson,* 129 F.2d 330, 331, 54 USPQ 96, 97 (CCPA 1942); *Finch v. Dillenback,* 121 F.2d 459, 460, 49 USPQ 731, 732 (CCPA 1941); *Van Cleef v. Tierney,* 118 F.2d 911, 912–13, 49 USPQ 274, 276 (CCPA 1941); *Walker v. Altorfer,* 111 F.2d 164, 165, 45 USPQ 317, 320 (CCPA 1940).

forts, will sometimes reach the wrong factual conclusion. *Id.*

In a lawsuit between two parties, a factual error can make a difference in one of two ways. First, it can result in a judgment in favor of the plaintiff when the true facts warrant a judgment for the defendant. The analogue in a criminal case would be the conviction of an innocent man. On the other hand, an erroneous factual determination can result in a judgment for the defendant when the true facts justify a judgment in plaintiff's favor. The criminal analogue would be the acquittal of a guilty man.

The standard of proof influences the relative frequency of these two types of erroneous outcomes. If, for example, the standard of proof for a criminal trial were a preponderance of the evidence rather than proof beyond a reasonable doubt, there would be a smaller risk of factual errors that result in freeing guilty persons, but a far greater risk of factual errors that result in convicting the innocent. Because the standard of proof affects the comparative frequency of these two types of erroneous outcomes, the choice of the standard to be applied in a particular kind of litigation should, in a rational world, reflect an assessment of the comparative social disutility of each.

When one makes such an assessment, the reason for different standards of proof in civil as opposed to criminal litigation becomes apparent. In a civil suit between two private parties for money damages, for example, we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor. A preponderance of the evidence standard therefore seems peculiarly appropriate for, as explained most sensibly, it simply requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence before he may find in favor of the party who has the burden to persuade the judge of the fact's existence."

In a criminal case, on the other hand, we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty.

*Id.* at 370–72, 90 S.Ct. at 1076–77 (footnote omitted). The Supreme Court has repeatedly utilized this "social disutility" analysis to determine appropriate burdens of proof. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 754–55, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1981) (clear and convincing evidence standard sufficient in parental rights termination proceeding); *Mitchell Bros.' Santa Ana Theater,* 454 U.S. at 92–93, 102 S.Ct. at 173–74 (obscenity need not be proven beyond a reasonable doubt in public nuisance action notwithstanding First Amendment implications); *Addington v. Texas,* 441 U.S. 418, 427, 99 S.Ct. 1804, 1810, 60 L.Ed.2d 323 (1979) (clear and convincing standard satisfies due process guarantee in civil commitment case).

The patent cases in which "beyond a reasonable doubt" statements have been made were not in the context of a reasoned analysis that a societal value was at stake requiring the highest degree of proof. As Justice Cardozo explained in *Radio Corp.,* the core thought or value running through these varying expressions is that the proof which establishes another's priority of invention over the patentee's must be highly persuasive and lead to a thorough conviction in one's mind of the truth of the challenger's position. However, the evidentiary standard usually used in civil cases, clear and convincing evidence, is sufficient for this purpose. *See Radio Corp.,* 293 U.S. at 8, 55 S.Ct. at 931. We see no reasonable justification for extending a criminal standard into the field of patent law or using verbiage which can only lead to confusion. An interference involving an already issued patent embraces the societal interests derived from the statutory presumption that an issued patent is valid. These interests require a standard of proof higher than a mere, or dubious, preponderance of the evidence. *Id. See also Santosky,* 455 U.S. at 756, 102 S.Ct. at 1396 ("clear and convincing evidence" standard appropriate in civil case where individual

interest at stake is "particularly important" and "more substantial than mere loss of money"). Accordingly, we conclude that the standard of "clear and convincing evidence," enunciated in *In re Reuter* and *Amax Fly Ash Corp.*, is the correct standard to be applied in this case.

■ That said, however, the case law is unequivocal that an inventor's testimony respecting the facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof. Throughout the history of the determination of patent rights, oral testimony by an alleged inventor asserting priority over a patentee's rights is regarded with skepticism, *see Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 60, 43 S.Ct. 322, 327, 67 L.Ed. 523 (1923); *Deering v. Winona Harvester Works*, 155 U.S. 286, 300–01, 15 S.Ct. 118, 123–24, 39 L.Ed. 153 (1894); *Barbed Wire Patent*, 143 U.S. 275, 285, 12 S.Ct. 443, 447, 36 L.Ed. 154 (1892), and as a result, such inventor testimony must be supported by some type of corroborating evidence. *Mergenthaler v. Scudder*, 11 App.D.C. 264, 278–79 (D.C.Cir.1897). This corroboration requirement will be explained more fully in relation to the board's ruling. It is sufficient to note at this point that without some type of corroborating evidence, an alleged inventor's testimony cannot satisfy the "clear and convincing evidence" standard. Thus, frequently a case turns on which of two inventors must shoulder the burden of proof.

■ Here, the board correctly placed the burden of proof on Price, the junior party. The board erred, however, by requiring Price to prove derivation and priority beyond a reasonable doubt rather than by clear and convincing evidence. This was legal error. Symsek urges that if we conclude the board applied the wrong burden of proof, we should evaluate the evidence on our own and conclude that the error was harmless. Under the circumstances of this case, we decline to so hold. Here, the erroneous burden of proof utilized by the board worked against Price's interest, *i.e.*, it was more difficult to over-

come than the proper burden of proof. Such a situation cannot ordinarily be classified as "harmless." *See Putnam Resources v. Pateman*, 958 F.2d 448, 471 (1st Cir.1992); *Chen v. General Accounting Office*, 821 F.2d 732, 741 n. 13 (D.C.Cir. 1987). Indeed, the application of the "beyond a reasonable doubt" standard appears to have led the board to an unreasonable requirement of corroboration.

## IV.

### CORROBORATION

Taking the board's analysis with respect to Price's assertion of prior conception as exemplary of the board's misapplication of the corroboration requirement, the board held that Symsek conceived the invention of the count no later than early February 1983. Price does not contest this date, aside from his position that Symsek and Regelin were neophytes in the field and could only have derived the invention from him. Instead, Price appeals the board's conclusion that he did not prove his conception of the waste heat recovery system of the count prior to early February 1983.

As indicated above, an inventor's testimony, standing alone, is insufficient to prove conception—some form of corroboration must be shown. *Amax Fly Ash Corp*, 514 F.2d at 1047, 206 Ct.Cl. at 768, 182 USPQ at 215. This rule is not new to patent law:

> [C]onception by an inventor, for the purpose of establishing priority, can not be proved by his mere allegation nor by his unsupported testimony where there has been no disclosure to others or embodiment of the invention in some clearly perceptible form, such as drawings or model, with sufficient proof of identity in point of time. For otherwise[,] such facile means of establishing priority of invention would, in many cases, offer great temptation to perjury, and would have the effect of virtually precluding the adverse party from the possibility of rebutting such evidence. Hence it has been ruled in many cases that the mere unsupported evidence of the alleged inventor,

on an issue of priority, as to ... conception and the time thereof, can not be received as sufficient proof of ... prior conception.

*Mergenthaler,* 11 App.D.C. at 278. *See Coleman v. Dines,* 754 F.2d 353, 359, 224 USPQ 857, 862 (Fed.Cir.1985) (citing *Fields v. Knowles,* 183 F.2d 593, 601, 86 USPQ 373, 279–80 (CCPA 1950)); *Cislak v. Wagner,* 215 F.2d 275, 281–82, 103 USPQ 39, 41–42 (CCPA 1954).

▮▮▮▮ A "rule of reason" analysis is applied to determine whether the inventor's prior conception testimony has been corroborated. *Coleman,* 754 F.2d at 360, 224 USPQ at 862. *See also Holmwood v. Sugavanam,* 948 F.2d 1236, 1238, 20 USPQ2d 1712, 1714 (Fed.Cir.1991) (applied in reduction to practice determination); *Berry v. Webb,* 412 F.2d 261, 266, 162 USPQ 170, 174 (CCPA 1969) ("There is no single formula that must be followed in proving corroboration."). An evaluation of *all* pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached. *Coleman,* 754 F.2d at 360, 224 USPQ at 862.[3] We conclude that the board extended the requirement of corroboration beyond reasonable bounds. *Cf. In re Reuter,* 670 F.2d at 1021, 210 USPQ at 256.

Price presented the board with several exhibits (Exhibits 3, 7, 8, 13, 14, and 15) in support of his affidavit that he conceived the invention before February 1983. In addition, Price submitted an affidavit from Christine Cargnoni Price, Corporate Secretary of Price Industries, to corroborate his testimony concerning the date of Exhibit 13. Secretary Price declared, in part:

2. In late 1980, Price Industries contacted Bethlehem Steel Corporation regarding a proposal to apply a PIET closed loop thermal fluid system with heat sink on an L–Blast Furnace. In March, 1982, Price Industries submitted such a proposal to Bethlehem Steel.

3. Exhibit [13] attached hereto is a true and accurate copy of Drawing No. PI–578–795 dated March 20, 1982. It is the regular practice of Price Industries to make and maintain drawings such as Exhibit [13]. I recall seeing Exhibit [13] on or around March 20, 1982.

The board held that Secretary Price's declaration did not corroborate Exhibit 13 because she did "not attribute the drawing to the applicant Price or indicate that she had any understanding of its content or that anyone explained the significance of the drawing to her." Further, the board held that Price's testimony that Exhibit 13 illustrates a reservoir located and sized according to the count was not corroborated by Secretary Price or anyone else.

▮▮▮▮ The board erred in its understanding that what a drawing discloses invariably needs to be supported by corroborating evidence. *Holmwood,* 948 F.2d at 1238–39, 20 USPQ2d at 1714. Exhibit 13 is before the board for the board to make its own determinations as to what this piece of evidence discloses. Unlike a situation where an inventor is proffering oral testimony attempting to remember specifically what was conceived and when it was conceived, a situation where, over time, honest witnesses can convince themselves that they conceived the invention of a valuable patent, *Eibel Process,* 261 U.S. at 60, 43 S.Ct. at 327, "corroboration" is not necessary to establish what a physical exhibit before the board includes. Only the inventor's testimony requires corroboration before it can be considered. *Holmwood,* 948 F.2d at 1239, 20 USPQ2d at 1715 (citing *Borror v. Herz,* 666 F.2d 569, 572–73, 213 USPQ 19, 22 (CCPA 1981)). While evidence as to what the drawing would mean

---

3. Factors bearing on the inventor's credibility and on whether the inventor's testimony has been adequately corroborated are: (1) delay between the event and the trial, (2) interest of corroborating witnesses, (3) contradiction or impeachment, (4) corroboration, (5) the corroborating witnesses' familiarity with details of alleged prior structure, (6) improbability of prior use considering state of the art, (7) impact of the invention on the industry, and (8) relationship between witness and alleged prior user. *In re Reuter,* 670 F.2d at 1021 n. 9, 210 USPQ at 255 n. 9. Notwithstanding this list of factors, case law clearly mandates some type of corroborating evidence to support an inventor's testimony. *Coleman,* 754 F.2d at 360, 224 USPQ at 862.

to one of skill in the art may assist the board in evaluating the drawing, the content of Exhibit 13 does not itself require corroboration. *See Loom Co. v. Higgins,* 105 U.S. (15 Otto) 580, 594, 26 L.Ed. 1177 (1882) ("An invention ... may be exhibited either in a drawing or in a model, so as to lay the foundation of a claim to priority, if it be sufficiently plain to enable those skilled in the art to understand it.").

 Secretary Price testified that Price Industries kept drawings such as Exhibit 13 as a regular business practice and that she recalled seeing this particular drawing on or around March 20, 1982. The board did not reject her testimony for lack of credibility but for lack of sufficiency. Secretary Price's affidavit, if believed, corroborates that Exhibit 13 was prepared before Symsek's date of conception. In any event, *all* of the evidence put forth by Price, including any of his *corroborated* testimony, must be considered as a whole, not individually, in determining whether Price conceived the invention of the count before Symsek. In other words, an inventor can conceivably prove prior conception by clear and convincing evidence although no one piece of evidence in and of itself establishes the prior conception. It is sufficient if the picture painted by all of the evidence taken collectively gives the board "an abiding conviction" that Price's assertion of prior conception is "highly probable." *See Buildex, Inc.,* 849 F.2d at 1463, 7 USPQ2d at 1327.

 As with the conception element of Price's case, corroboration is required to support his testimony regarding communication and reasonable diligence. *Davis,* 620 F.2d at 889, 205 USPQ at 1068 (communication); *Kendall v. Searles,* 173 F.2d 986, 993, 81 USPQ 363, 368–69 (CCPA 1949) (diligence). Likewise, as with conception, all of the evidence of record must be collectively evaluated in determining whether

4. This evaluation must include (1) Price's work with the American Bridge Division of U.S. Steel and Symsek in discussing a waste heat recovery system for Bethlehem Steel and in preparing a waste heat recovery system for installation on U.S. Steel blast furnaces, (2) the testimony by two American Bridge engineers involved in the

Price communicated his conception to Symsek [4] or was reasonably diligent in reducing his conception to practice. *See Hedgewick,* 497 F.2d at 908, 182 USPQ at 169.

## V.

### CONCLUSION

The board's decision is vacated and the case is remanded to the board. On remand the board must evaluate all of the evidence under the clear and convincing evidence standard.

### COSTS

Each party to bear its own costs.

VACATED and REMANDED.

above preparation process, Bradley Powell and Joseph Kroker, that it was unfair for Symsek (U.S. Steel) to apply for a patent on a process which had actually been developed by Price, and (3) Symsek's experience in the field of designing systems such as the one at issue and his level of understanding the system.