**Jean C. KRIDL and Robert M. Goodman, Appellants,**

v.

**Francis P. McCORMICK, Kenneth A. Barton, and William F. Swain, Appellees.**

No. 96–1339.

United States Court of Appeals, Federal Circuit.

Feb. 5, 1997.

Richard D. Kelly, Oblon, Spivak, McClelland, Maier & Neustadt, P.C., Arlington, VA, argued for appellants. With him on the brief was Stephen G. Baxter.

Nicholas J. Seay, Quarles & Brady, Madison, WI, argued for appellees.

Before ARCHER, Chief Judge, LOURIE, and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

Jean C. Kridl and Robert M. Goodman (collectively "Kridl") appeal from the decision of the Patent and Trademark Office Board of Patent Appeals and Interferences awarding judgment in this interference to Francis P. McCormick, Kenneth A. Barton, and William Swain (collectively "McCormick"). Because the board did not err in concluding that McCormick conceived the invention of the interference count before Kridl, we affirm.

## BACKGROUND

This appeal concerns an interference between the parties McCormick and Kridl. McCormick, the senior party, filed U.S. patent application 06/788,002 on October 16, 1985. The application was later assigned to Agracetus, Inc. Kridl, the junior party, filed her U.S. patent application on March 28, 1986. That application was assigned to Calgene, Inc.

The invention of the count concerns the use of "antisense" recombinant DNA technology to make a virus-resistant plant or plant cell.[1] Recombinant DNA technology involves insertion of a specific double-stranded DNA, via a cloning vector, into a target organism. Generally, one strand of the inserted DNA encodes a desired protein. This strand is termed the "coding" strand and is transcribed to yield RNA which, in turn, is translated to yield the protein. The other, nontranscribed, DNA strand is termed the "noncoding" strand.

Antisense technology differs from conventional recombinant DNA technology in that the orientation of the inserted DNA is reversed, i.e., the strand encoding the protein is not transcribed while the strand that would normally be non-coding is, in fact, transcribed. Thus, a DNA inserted in the antisense orientation yields RNA that is complementary to RNA transcribed from DNA in the normal, or "sense," orientation. The plants or plant cells of the invention of the count[2] exhibit viral resistance because DNA encoding a viral protein is inserted into the plant genome in the antisense orientation. This inserted DNA is transcribed to yield RNA that binds to its complement, the viral RNA. Accordingly, translation of the viral RNA to yield viral protein is inhibited and, because the viral protein is no longer produced, replication of the virus stops.

The interference was re-declared on May 5, 1992.[3] After conducting a hearing, the board issued a final decision in which it decided the issue of priority. The board first determined that Kridl established that she had a conception of the invention by June 1, 1984 and began diligence by November 12, 1984. These determinations are not challenged on appeal.

The board then reviewed McCormick's evidence of conception, consisting of the testimony of four witnesses, Dr. William Swain (a named inventor and an Agracetus employee), Barry Cohen, Andrew Thomas, and Lori Graham (Agracetus employees), and eleven associated exhibits. Chief among these exhibits were pages from the laboratory notebook of Marcia Vincent, who worked under Swain's supervision. On notebook pages dated January 18, 1984 and witnessed by Cohen, Vincent described an experiment in which a gene fragment was inserted into a cloning vector in both the sense and antisense orientations. One strand of this inserted gene fragment encoded a viral protein. Swain

---

1. For a detailed discussion of recombinant DNA technology, see In re O'Farrell, 853 F.2d 894, 895–99, 7 USPQ2d 1673, 1674–77 (Fed.Cir. 1988), and references therein.

2. The sole count in the interference reads as follows:

 A virus-resistant plant comprising in its chromosomal genome a DNA construct comprising a plant expressible promoter upstream from a DNA sequence which causes the transcription of a negative strand RNA complementary to viral RNA; or
 a method of producing a virus resistant plant comprising the steps of: (a) introducing into the chromosomal genome of a plant cell a recombinant DNA molecule comprising a plant-expressible promoter upstream from a DNA sequence which causes the transcription of a negative strand RNA complementary to viral RNA; (b) recovering transformed plant cells; and (c) re-

generating virus resistant plants from said transformed cells; or
 a DNA construct comprising a transcriptional initiation region functional in a plant cell, a sequence where the transcribed sequence is complementary to an RNA sequence of a plant virus on a strand used for expression, and a transcriptional termination region functional in a plant cell; or
 a plant cell containing a DNA construct comprising a transcriptional initiation region functional in a plant cell, a sequence where the transcribed sequence is complementary to an RNA sequence of a plant virus on [sic] strand used for expression, and a transcriptional termination region functional in a plant cell.

3. The interference originally included a third party, Loesch–Fries. Loesch–Fries and McCormick entered into a settlement agreement, leaving only the present parties to contest the interference.

testified that he developed the strategy described in Vincent's notes in order to produce the antisense constructs of the invention and that he had communicated this strategy to Vincent.

Based upon this evidence, the board concluded that McCormick had presented sufficient evidence to corroborate conception of the invention by at least January 18, 1984 and that, as the first to conceive and the first to reduce to practice (constructively) by filing a patent application, McCormick was the prior inventor.[4] In arriving at this conclusion, the board engaged in a "rule of reason" analysis. *See Price v. Symsek*, 988 F.2d 1187, 1195, 26 USPQ2d 1031, 1037 (Fed.Cir. 1993) ("A 'rule of reason' analysis is applied to determine whether the inventor's prior conception testimony has been corroborated. An evaluation of *all* pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached.") (citations omitted). The board found Swain's testimony credible and consistent with the other pertinent evidence and, accordingly, awarded judgment to McCormick.

Kridl filed a request for reconsideration, arguing that the board improperly used a rule of reason analysis to substitute for testimony directly corroborating conception of a utility. In denying Kridl's request for reconsideration, the board noted that

> the "rule of reason" which governs our evaluation of the evidence does not require that conception be proved in detail by an unbroken chain of corroboration but rather that a reasoned determination be made as to the credibility of the inventor's story. We found that the inventor's story including that the construct of the count was useful to confer viral resistance was credible before us since Ms. Vincent's laboratory notebook includes each feature of the count except for utility and is consistent with the other evidence.

Kridl timely appealed to this court, contesting the board's conclusion regarding priority.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A) (1994).

## DISCUSSION

Priority is a question of law that we review *de novo*. *Price v. Symsek*, 988 F.2d 1187, 1190, 26 USPQ2d 1031, 1033 (Fed.Cir. 1993). Likewise, we review *de novo* the board's ultimate determination of conception. *Bosies v. Benedict*, 27 F.3d 539, 542, 30 USPQ2d 1862, 1864 (Fed.Cir.1994). We review the board's factual findings underlying its determinations of conception and priority for clear error. *Holmwood v. Sugavanam*, 948 F.2d 1236, 1238, 20 USPQ2d 1712, 1714 (Fed.Cir.1991).

Kridl argues that the evidence corroborating McCormick's conception was not legally sufficient to establish that McCormick conceived the utility of using an antisense construct to confer antiviral activity on plants. Specifically, Kridl argues that the only evidence of conception of utility was offered by Swain, a named inventor, and that corroborating evidence must be offered by one other than an inventor. Kridl also argues that even Swain's testimony does not explicitly refer to the antiviral utility for the invention. McCormick responds that the board correctly evaluated Swain's testimony under a rule of reason analysis and found it sufficient to prove conception of the antisense construct, including conception of the antiviral utility of that construct. We agree with McCormick.

Conception is the formation "in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is therefore to be applied in practice." *Coleman v. Dines*, 754 F.2d 353, 359, 224 USPQ 857, 862 (Fed.Cir.1985) (quoting *Gunter v. Stream*, 573 F.2d 77, 80, 197 USPQ 482, 484 (CCPA 1978)) (emphasis omitted). Conception must include every feature or limitation of the claimed invention. *Davis v. Reddy*, 620 F.2d 885, 889, 205 USPQ 1065, 1069 (CCPA 1980).

"Conception must be proved by corroborating evidence which shows that the

---

4. The board also stated an alternate ground on which Kridl's case for priority failed, but in view of our determination that McCormick adequately proved conception before Kridl, we need not address this ground of decision.

inventor disclosed to others his 'complete thought expressed in such clear terms as to enable those skilled in the art' to make the invention." *Coleman*, 754 F.2d at 359, 224 USPQ at 862 (quoting *Field v. Knowles*, 37 C.C.P.A. 1211, 183 F.2d 593, 601, 86 USPQ 373, 379 (CCPA 1950)). However, "there is no final single formula that must be followed in proving corroboration." *Berry v. Webb*, 56 C.C.P.A. 1272, 412 F.2d 261, 266, 162 USPQ 170, 174 (CCPA 1969). Rather, the sufficiency of corroborative evidence is determined by the "rule of reason." *Price*, 988 F.2d at 1195, 26 USPQ2d at 1037; *Berry*, 412 F.2d at 266, 162 USPQ at 173. Accordingly, a tribunal must make a reasonable analysis of all of the pertinent evidence to determine whether the inventor's testimony is credible. *Price*, 988 F.2d at 1195, 26 USPQ2d at 1037. The tribunal must also bear in mind the purpose of corroboration, which is to prevent fraud, by providing independent confirmation of the inventor's testimony. *See Berry*, 412 F.2d at 266, 162 USPQ at 173 ("The purpose of the rule requiring corroboration is to prevent fraud."); *Reese v. Hurst*, 661 F.2d 1222, 1225, 211 USPQ 936, 940 (CCPA 1981) ("[E]vidence of corroboration must not depend solely on the inventor himself.").

 In this case, the board acknowledged that McCormick did not present evidence explicitly corroborating conception of the utility of the invention. However, it based its decision on Swain's testimony and on its factual finding that "[t]he McCormick conception, as evidenced by Vincent's laboratory notebook, includes each feature of the count and is consistent with the other evidence." The board found adequate proof of McCormick's conception of utility because it found Swain's testimony credible in light of the full record. The board did not err in its decision, which is supported by the reasoning of our predecessor court in *Berges v. Gottstein*, 618 F.2d 771, 205 USPQ 691 (CCPA 1980) (applying rule of reason in context of reduction to practice).

In *Berges*, the court reversed the board's award of priority, which was based upon an erroneous conclusion that the inventor's own allegations of a prior reduction to practice were not corroborated. 618 F.2d at 774–76, 205 USPQ at 694–95. The court held that "relevant related independent events" served to corroborate the inventor's allegations of utility. *Id.* at 775, 618 F.2d 771, 205 USPQ at 694. First, the court stated that "considering the field of investigation, we see *no other substantial use* for these compounds at that time except the research team's stated general objective." *Id.* (emphasis added). That general objective mirrored the stated utility of the invention. Second, the court relied upon corroborated evidence of the utility of compounds structurally related to the invention. The court held that "although these tests, individually, are not conclusive, the *absence of contradiction and internal conflict* in the present assemblage of evidence inexorably strengthens the case made by appellant for independent corroboration of the inventor's testimony." *Id.* (emphasis added).

Kridl argues that here, unlike the *Berges* case, the evidence relied upon by the board is insufficient to support the board's decision because the invention of this count had more than one substantial use. Kridl argues that McCormick may have intended to use the antisense constructs described in Vincent's notes as experimental controls or may have designed the experiments as a means for producing DNA constructs in the sense orientation. We do not agree.

The parties agree that at the time of the conception, antisense constructs in plants were not known; only sense constructs were known. It would have been illogical to use novel constructs as experimental controls; controls are usually known and established materials. It would also have been wasteful to attempt to generate sense constructs by a process that also generated antisense constructs because it was well-known how to make sense constructs alone. Therefore, the board's decision is consistent with *Berges* in that one skilled in the art would have seen only one substantial use for the antisense constructs described in Vincent's notes: a means for imparting viral resistance to plants or plant cells.

Furthermore, as the board correctly noted, no other relevant evidence contradicts or conflicts with Swain's testimony. In light of

the corroborated evidence of record, especially Vincent's corroborated notes, the board correctly found no reason to doubt Swain's testimony. Therefore, contrary to Kridl's argument, the antisense constructs do "speak for themselves" inasmuch as use to confer viral resistance was their only tenable utility and the conception of that utility was consistent with all of the other corroborated evidence. Accordingly, the board correctly concluded that McCormick's evidence was sufficient to prove conception of the invention of the count, even though that evidence lacked explicit corroboration of the conception of antiviral utility.

Finally, Kridl argues that the case of *Rey–Bellet v. Engelhardt*, 493 F.2d 1380, 181 USPQ 453 (CCPA 1974) mandates that evidence sufficient to corroborate conception must explicitly describe the intended utility of an invention. McCormick responds, and we agree, that Kridl misreads the holding in *Rey–Bellet*.

In *Rey–Bellet*, the court recognized that the board had noted that "conception of [an] invention is not complete absent a conception of its utility." *Id.* at 1385, 493 F.2d 1380, 181 USPQ at 456. However, the court then held that the appellant's evidence was sufficient to corroborate conception of the invention. In *Rey–Bellet*, the key factor was the structural similarity of the compounds of the invention to prior art compounds having a known use, thereby indicating by implication the conceived utility. *Id.* at 1385–86, 493 F.2d 1380, 181 USPQ at 457. Thus, *Rey–Bellet* is not inconsistent with the board's decision in this case.

Under a rule of reason analysis, an inventor's uncorroborated testimony that he conceived a utility for his invention may be accepted if there exists other corroborated evidence to indicate that the inventor's testimony is credible. McCormick's evidence met this test. While there must generally be corroboration of an inventor's testimony of conception of his or her invention, *see Price*, 988 F.2d at 1194, 26 USPQ2d at 1036 ("[A]n inventor's testimony, standing alone, is insufficient to prove conception-some form of corroboration must be shown."), the utility of the invention need not always be explicitly corroborated. Circumstances may make a utility implicit, as they did here. The evidence here indicates that a person of ordinary skill in the art would have accepted Swain's testimony of intended use of his invention at the time of his conception. The evidence in no way contradicts his testimony that he conceived the utility of his invention when he conceived its other features. Kridl did not offer any tenable, alternate use for the antisense DNA construct, nor did she demonstrate that Swain's testimony regarding the intended utility of the invention was inconsistent with the other corroborated evidence of record.

## CONCLUSION

The board did not err in concluding that McCormick's evidence was sufficient to prove conception under the rule of reason. Accordingly, the decision of the board is

*AFFIRMED.*