**HAY & FORAGE INDUSTRIES, et al., Plaintiffs,**

v.

**NEW HOLLAND NORTH AMERICA, INC., Defendant.**

**No. 97–2150–JWL.**

United States District Court, D. Kansas.

Sept. 4, 1998.

Thomas H. Van Hoozer, Warren N. Williams, John M. Collins, Stephen D. Timmons, Andrew G. Colombo, Hovey, Williams, Timmons & Collins, Kansas City, MO, for Litigant Hay & Forage Industries, plaintiff.

Jack T Bangert, Sherman, Taff & Bangert, P.C., Leawood, KS, Devon A. Rolf, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Mark D. Katz, Sherman, Taff & Bangert, P.C., Kansas City, MO, Thomas J Macpeak, Robert V Sloan, Mark Boland, Steven M Gruskin, Sughrue, Mion, Zinn, Macpeak & Seas, PLLC, Washington, DC, for New Holland North America, Inc., defendant.

Devon A. Rolf, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Thomas J Macpeak, Robert V Sloan, Mark Boland, Steven M Gruskin, Frank L Bernstein, Sughrue, Mion, Zinn, Macpeak & Seas, PLLC, Washington, DC, for New Holland North America, Inc., counter-claimant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiffs allege that certain hay harvesting machines sold in the United States by defendant New Holland North America, Inc. ("New Holland") infringe upon U.S. Patent No. 5,272,859 (" '859 patent"), which is owned by plaintiff Hay and Forage Industries ("HFI"). The court held a *Markman* hearing on the matter on June 1, 1998, and subsequently issued an order construing the disputed claims of the '859 patent. *See Hay & Forage Indus. v. New Holland North America, Inc.*, 25 F.Supp.2d 1170, (D.Kan. 1998). The matter is now before the court on four motions for partial summary judgment. Defendant seeks partial summary judgment of non-infringement as to claim 10 of the '859 patent (Doc. 115). Defendant also seeks partial summary judgment of invalidity for indefiniteness as to claim 10 (Doc. 117). Further, defendant seeks partial summary judgment of invalidity for violation of the best mode requirement (Doc. 119). Plaintiffs seek partial summary judgment dismissing defendant's defenses and counterclaims based on the '859 patent's alleged derivation from or co-inventorship by Mr. Marc Berlivet (Doc. 132).[1] For the reasons set forth below, the court denies all four motions.

## I. Background

The following facts are undisputed. Both the plaintiffs and New Holland manufacture and sell in the United States hay harvesting machines known as mechanical drive, center pivot mower conditioners. Plaintiffs began selling their machines in 1992. New Holland entered the market in the fall of 1996. The plaintiffs' machine is manufactured and sold pursuant to the '859 patent.

Of primary importance in this case is a new feature the '859 patent added to the prior art of hay harvesting machines. This new feature was a "steering structure" interposed between the directional pulling mechanism (called the "tongue") and the cutting-power transfer mechanism (called the "junction box" or "gearbox") to transmit the swinging motion of the tongue to the junction box. Also relevant to the parties' dispute is a feature of the junction box disclosed in the '859 patent that allows for pivotal movement about an upright axis that is spaced horizontally from the axis upon which the mobile frame of the machine pivots about the tongue.

Claim 1 of the '859 patent is as follows:

[We claim,] [i]n a pull-type crop harvesting machine, the improvement comprising:

> a mobile frame;
>
> a pull-tongue pivotally coupled with the frame for horizontal adjusting movement about a first upright axis between a number of angular positions relative to

---

1. Also pending before the court are plaintiffs' motion for partial summary judgment of infringement (Doc. 125), plaintiffs' motion for partial summary judgment that certain "Niemeyer machines" do not invalidate the '859 patent (Doc. 129), and defendant's cross motions to both of these motions (Docs.140, 141). The court retains these motions under advisement.

the path of travel of the machine for varying the lateral position of the machine relative to a towing vehicle;

a harvesting header supported by the frame in a position for performing harvesting operations on a crop as the machine is towed across a field,

said header having driveable operating components associated therewith;

a mechanical drive line extending along and rotatably supported by the tongue for supplying driving power to said operating components in said angular positions of the tongue;

a junction box on the header having an input shaft and an output shaft rotatably supported by the box and operably intercoupled in fixed angular relation to one another within the box,

said input shaft being operably connected with said drive line for receiving driving power therefrom and said output shaft being operably connected to said operating components for driving the same,

*said box being pivotally mounted on the header for swinging movement about a second upright axis spaced horizontally from the first axis; and*

*steering structure connected between the junction box and the tongue for causing the junction box to swing responsively when the latter is pivoted about said first axis between its various angular positions.*

(emphasis added). Claim 10 of the '859 patent is as follows:

In a pull type harvesting machine as claimed in [claims 1, 8, and 9],

said steering structure including telescoping linkage having a front pivotal connection with the tongue at a point which is at least approximately equidistant from said opposite ends of the telescopic (drive line) section [as claimed in claims 1, 8, and 9].

In the prior *Markman* proceeding, the court construed the steering structure clause of claim 1 and the entirety of claim 10. *See Hay & Forage Indus.*, 25 F.Supp.2d 1170, 1176, 1178–80 The court's construction of claim 1 is not relevant to the pending motions. The court construed the "telescoping linkage" element of claim 10 to require a linkage having "overlapping sections, as if in overlapping cylindrical sections." *Id.* at 1178. The court construed the "front pivotal connection with the tongue at a point" element of claim 10 to require that the steering structure be "connected to the tongue at a spot which allows for pivotal movement." *Id.* at 1180. The court construed the "at least approximately equidistant" element of claim 10 to require a placement of the front pivotal connection "at least reasonably close to" the exact point on the tongue that is equidistant from the opposite ends of the telescoping drive line. *Id.* at 1180.

The following diagram, taken directly from the first page of the '859 patent, shows the preferred embodiment of the pertinent elements described in claims 1 and 10:

[T]he steering structure 138 comprises a tubular, telescoping linkage consisting of an inner section 140 and a concentrically disposed outer section 142. The inner tube 140 has at its forward end a ball and socket swivel connection 144 with a bracket 146 on the underside of the tongue 30. The opposite end of the inner tube 140 is slidingly received within the outer tube 142. . . .

'859 patent.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Transmatic, Inc. v. Gulton Indus.*, 53 F.3d 1270, 1274 (Fed.Cir.1995). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Continental Plastic Containers v.*

*Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1076 (Fed.Cir.1998). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505); *Continental Plastic Containers*, 141 F.3d at 1076.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler*, 144 F.3d at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the

nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

▮ A party challenging a patent's validity has the burden to show invalidity by clear and convincing evidence. *National Presto Indus. v. West Bend Co.,* 76 F.3d 1185, 1189 (Fed.Cir.1996). In deciding a motion for summary judgment on patent validity issues, the court must also consider this heightened standard. *Id.* (citing *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505). Thus, if the court concludes that the patent challenger could not meet its burden of proving invalidity by clear and convincing evidence, summary judgment in favor of the patentee is appropriate. *National Presto,* 76 F.3d at 1189.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1); *see also Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1053 n. 8, 137 L.Ed.2d 146 (1997) ("Where the evidence is such that no reasonable jury could determine two elements to be equivalent [under patent law's 'doctrine of equivalents'], district courts are obliged to grant partial or complete summary judgment [of non-infringement].").

### III. Motion for Summary Judgment of Invalidity for Claim Indefiniteness

▮ Defendant contends that the phrase "at least approximately equidistant" in claim 10 renders the claim fatally ambiguous pursuant to 35 U.S.C. § 112, ¶ 2. This statute requires patent specifications to "conclude with one or more claims pointing out and distinctly claiming the subject matter which the applicant regards as his invention." *Id.* Whether a claim is invalid for indefiniteness under section 112 depends on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the specification. *North American Vaccine v. American Cyanamid Co.,* 7 F.3d 1571, 1579 (Fed.Cir.1993) (citing *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1576 (Fed.Cir.1986)). "If the claims, read in the light of the specification, reasonably apprise those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more." *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 624 (Fed.Cir. 1985), *quoted in North American Vaccine,* 7 F.3d at 1579–80. Compliance with the definiteness requirement is generally a question of law. *North American Vaccine,* 7 F.3d at 1579; *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 624 (Fed.Cir. 1985).

The court concludes that claim 10 is not invalid for indefiniteness. The court begins by noting that the mere use of the phrase "at least approximately" does not itself violate section 112. *See Seattle Box Co. v. Industrial Crating & Packing, Inc.,* 731 F.2d 818, 826 (Fed.Cir.1984) ("Definiteness problems often arise when words of degree are used in a claim. That some claim language may not be precise, however, does not automatically render a claim invalid.") (upholding "substantially equal to" claim language); *see also Andrew Corp. v. Gabriel Electronics, Inc.,* 847 F.2d 819, 821 (Fed.Cir.1988) (reversing district court's determination that terms such as "approach each other", "close to", "substantially equal", and "closely approximate" rendered claims fatally indefinite); *In re Fisher,* 57 C.C.P.A. 1099, 427 F.2d 833, 838 (C.C.P.A. 1970) (use of "at least" does not render claim indefinite); *cf. Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1579 (Fed.Cir.1995) (PTO allowed "at least approximately" language in amended claim without objecting on indefiniteness grounds). Moreover, every prior art patent cited on the face of the '859 patent uses terms in its claims that are very similar to, and in some cases even identical to, the "at least approximately" language.

The court believes that the "at least approximately equidistant" language, when read in light of the patent specification, rea-

sonably apprises one of ordinary skill in the art of the scope of claim 10. Figure 6 of the '859 patent, read in conjunction with column 6, lines 35–40 of the specification, explains the geometric relationship envisioned by claim 10:

**Fig.6.**

FIG. 6 shows the geometric relationship between the tongue 30, the drive line 90, and the steering structure 138. It will be noted that the connection point 144 of the steering structure to the tongue 30 is *approximately equidistantly* spaced from both of the U-joints 104 and 110.

'859 patent (emphasis added). One of ordinary skill would recognize, the court believes, that as the tongue 30 swings about its axis to position the operative cutting components of the machine in alternative positions, the "exact point on the tongue that is equidistant from the opposite ends of the telescoping drive line," *see Hay & Forage,* 25 F.Supp.2d at 1180, does not remain fixed. This is because one of ordinary skill would recognize that the geometry by which the exact center point is measured changes as the drive line telescopes. As the tongue swings, the distance between the connection point 144 and the U-joint 110 changes (in conjunction with the telescoping of the steering structure), but the distance between the connection point 144 and the U-joint 104 stays the same. Consequently, the imaginary exact point of equidistance moves a short distance away

from the connection point 144. The court believes those of ordinary skill in the art would understand this geometry. The court also believes that this geometry reasonably apprises such artisans of the patent's scope.

■ Moreover, the "at least approximately equidistant" language is as precise as the subject matter permits. The precise limits of the distance away from which the front pivotal connection can stray from the exact point of equidistance and still be "at least approximately equidistant" from the opposite ends of the telescoping drive line or "at least reasonably close to," *see Hay & Forage,* 25 F.Supp.2d at 1180, the exact point of equidistance would be very difficult to determine. In the context of the '859 patent, "at least approximately equidistant" is sufficient to avoid invalidity for indefiniteness. *See Andrew Corp.,* 847 F.2d at 823. ("The law imposes no obligation on a patent applicant to ... set the claim limits at the precise technological edge of the invention. A claim is not fatally indefinite for failing specifically to delineate the point at which the change in physical phenomenon occurs."). A patentee has particular latitude in the use of relative terms in his claim where, as here, the prior

art is remote from the claimed invention.[2] Cf. *Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200, 1218 (Fed.Cir.1991) ("When the meaning of the claims is in doubt, especially when, as is the case here, there is close prior art, they are properly declared invalid. . . . In arriving at this conclusion, we caution that our holding . . . should not be understood as ruling out any and all uses of ["about" as a term of degree] in patent claims. It may be acceptable in appropriate fact situations.").

Defendant nonetheless contends claim 10 is invalid for indefiniteness. Defendant directs the court's attention to a number of cases purporting to support its position. In *Amgen*, 927 F.2d at 1217–18, for example, the Federal Circuit held invalid for indefiniteness a claim limitation reciting "a specific activity of at least about 160,000 IU per absorbance unit." Defendant, apparently seizing upon the analogy between "at least about" in *Amgen* and "at least approximately" in this case, argues that claim 10 is indefinite.

The court does not read *Amgen* as broadly as defendant urges. Unlike this case, the prior art in *Amgen* was very close. The patentee in *Amgen* had originally sought to patent claims with a specific activity limitation of "at least 120,000." *Id.* The PTO rejected this limitation because prior art disclosed a similar product having specific activity of 128,620. *Id.* In response, the patentee submitted the "at least about 160,000" language. *Id.* In the particular field at issue in *Amgen*, the recital of specific activity levels was such "an imprecise form of measurement with a range of error" that the "at least about" limitation did not sufficiently distinguish the invention over the close prior art. *Id.* Here, on the other hand, the record before the court does not indicate that the PTO had any problem with the "at least approximately equidistant" language because of close prior art. Moreover, the Niemeyer "prior art" referred to by the defendant is, in the context of this case, far more distant from the '859 patent than the prior art in

*Amgen* was distant from the patent there at issue. In *Amgen*, "nothing in the specification, prosecution history, or prior art provide[d] any indication as to what range of specific activity is covered." *Id.* Here, as the court explained above, the geometry demonstrated in the '859 patent specification provides ample indication to those skilled in the art of the scope of the "at least approximately equidistant" language.

Defendant also believes that claim 10 is indefinite because the language, the specification, and the prosecution history provide no concrete indication of what numerical range is covered by the claim. Again, however, the court disagrees. Defendant finds support in *Amgen* for its theory that claim definiteness requires concrete numerical limits. *Id.* ("[N]othing in the specification, prosecution history, or prior art provides any indication as to what *range* of specific activity is covered by the term 'about,' and . . . no expert testified as to a definite meaning for the term in the context of the prior art.") (emphasis added). *Amgen* does not support defendant's theory because in the context of *Amgen*, the existence of close prior art required more precision than is required here. *See Andrew Corp.*, 847 F.2d at 823 ("It is the prior public knowledge—the "prior art"—by which patentability is tested. A patentee may set the metes and bounds of that which is sought to be patented, and it is not material whether the phenomena just outside these claim limits are qualitatively different from that which is claimed.").

Other cases upon which defendant relies for a requirement of concrete numerical limits have been either expressly or impliedly limited by the Federal Circuit. *See, e.g., Helene Curtis Indus. v. Sales Affiliates*, 233 F.2d 148, 154 (2d Cir.1956) (patent invalid for indefiniteness where "nothing in the four corners of the patent defines" the relevant range), *limited in Andrew Corp.*, 847 F.2d at 823 n. 4 (district court misread *Helene Curtis* as requiring precise numerical range; "[i]n

---

**2.** Defendant argues that the "Niemeyer" machine, which is the subject of cross motions for summary judgment not currently under consideration by the court, constitutes close prior art. The court disagrees because in the Niemeyer machine, the alleged "steering structure" contacts the tongue entirely or almost entirely at one end of the drive line; the connection is nowhere near the exact point of equidistance.

... *Helene Curtis* the claim limitation fell in the midst of the prior art; ... the claim in *Helene Curtis* was to an optimum range of a chemical property *where the chemical was already known to have that property.*") (emphasis added); *see also Andrew Corp.,* 847 F.2d at 823 ("To the extent that *Brown–Bridge* [*Mills, Inc. v. Eastern Fine Paper, Inc.,* 700 F.2d 759, 763 (1st Cir.1983),] may be read as holding, as the district court appears to have believed, that a claim is invalid unless it sets as a limitation the exact technological border of the invention, we expressly reject that holding.").[3]

The court believes an artisan of ordinary skill would understand the scope of claim 10 when it is read in light of the '859 patent specification. Accordingly, defendant's motion for summary judgment of invalidity for claim indefiniteness is denied.

## IV. Motion for Summary Judgment of Non-infringement

■ Defendant moves for summary judgment that its accused machine does not infringe claim 10 of the '859 patent. Plaintiff has abandoned any claim of literal infringement as to claim 10, so the court need only decide whether there are genuine issues of material fact which preclude summary judgment of infringement of claim 10 under the doctrine of equivalents. The court concludes that there are, and denies summary judgment.

■ "A determination of infringement requires a two step analysis. First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309 (Fed.Cir.1998). The court has already performed the first step. *See Hay & Forage,* 25 F.Supp.2d at 1172–80. "The second step of the infringement analysis, determining whether a particular device infringes a properly construed claim, is a question of fact.... As such, it is amenable to summary judgment where, inter alia, no

reasonable fact finder could find infringement." *Id.* (citations omitted); *see also Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1053 n. 8, 137 L.Ed.2d 146 ("Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment.").

■ A product that does not literally infringe the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product and the elements of the claim. *Ethicon,* 149 F.3d at 1315 (citing *Warner–Jenkinson,* 117 S.Ct. at 1045).

> Infringement may be found under the doctrine of equivalents if every limitation of the asserted claim, or its "equivalent," is found in the accused subject matter, where an "equivalent" differs from the claimed limitation only insubstantially. Whether a component in the accused subject matter performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determination.

*Ethicon,* 149 F.3d at 1315. The former of these analyses is often referred to as the "insubstantial differences" approach. *Warner–Jenkinson,* 117 S.Ct. at 1054. The latter is often referred to as the "triple identity" or the " function/way/result" approach. *Id.* The triple identity approach is thought to be particularly suitable for analyzing mechanical devices, such as the device disclosed in the '859 patent.

The Supreme Court recently rejected a direct challenge to the doctrine of equivalents. *See id.* at 1045 ("Petitioner ... invites us to speak the death knell of [the] doctrine [of equivalents]. We decline that invitation."). The Court recognized that "[t]he doctrine of equivalents, when applied broadly, conflicts with the definitional and public notice functions of the statutory claiming re-

---

**3.** Although defendant did not cite *Brown–Bridge,* it is representative of the precise numerical limits approach the defendant would have this court

adopt. *See, e.g., Todd v. Sears, Roebuck & Co.,* 216 F.2d 594 (4th Cir.1954).

quirement." *Id.* at 1048. The Court upheld the doctrine, however, teaching that courts must remain vigilant in their application of, inter alia, the "All Elements" rule to avoid the potential conflict. *See Ethicon,* 149 F.3d at 1316 (quoting *Warner–Jenkinson,* 117 S.Ct. at 1054 ("The determination of equivalence should be applied as an objective inquiry on an element-by-element basis.")). One of the purposes of the doctrine of equivalents is to protect inventors from unscrupulous copying or from making insubstantial changes between the claimed and accused products or processes. *Hilton Davis Chemical Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512 (Fed.Cir.1995), *rev'd on other grounds,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *Kinzenbaw v. Deere & Co.,* 741 F.2d 383, 389 (Fed.Cir.1984).

In *Ethicon,* the Federal Circuit performed an extensive post-*Warner–Jenkinson* analysis of summary judgment practice under the doctrine of equivalents. Reviewing a district court's grant of summary judgment of non-infringement on two separate claims of a patent, the Federal Circuit affirmed summary judgment as to one claim and reversed as to the other. *Ethicon,* 149 F.3d at 1321. In doing so, the Federal Circuit reviewed its recent caselaw and made very clear that evaluating summary judgment motions under the doctrine of equivalents, as is generally true in federal court, requires a fact specific inquiry. *Id.* at 1316–*1321. Specifically, courts must examine whether a reasonable finder of fact could conclude that given elements are equivalent. *Id.*

The *Ethicon* court affirmed summary judgment of non-infringement under the doctrine of equivalents as to claim 6 of the patent there in issue. *Id.* at 1321. Claim 6 required a lockout mechanism to be "connected to said longitudinal slots." *Id.* at 1312. The Federal Circuit upheld summary judgment because the lockout mechanism in the accused device was "not even close" to the longitudinal slots:

> *Although Ethicon is certainly correct that it would be insufficient to base a conclusion of non-infringement by equivalents solely on the fact that the allegedly infringing lockout is not connected to the longitudinal slots,* the district court determined that USSC's lockout is not even close to the longitudinal slots. Instead, it is located at the far end of the DLU, near the rear of the stapler. Because the rear of the stapler is opposite the longitudinal slots, no reasonable jury could have found that the USSC lockout was substantially "connected to said longitudinal slots."

*Ethicon,* 149 F.3d at 1318 (emphasis added).

The court believes the Federal Circuit's analysis of claim 6 in *Ethicon* was intended to recognize the danger inherent in an unthinking, assembly line approach to the "All Elements" rule:

> We agree with Ethicon that, if read as argued by USSC, [out-of-context statements from some of our prior cases] would force the All Elements rule to swallow the doctrine of equivalents, reducing the application of the doctrine to nothing more than a repeated analysis of literal infringement. Once a negative determination of literal infringement is made, that failure to meet a limitation would preclude a finding of infringement under the doctrine. The doctrine of equivalents would thus be rendered superfluous under USSC's view, because a finding of non-infringement would be foreordained when a court has already found that the accused subject matter does not literally fall within the scope of the asserted claim. However, any analysis of infringement under the doctrine of equivalents necessarily deals with subject matter that is "beyond," "ignored" by, and not included in the literal scope of such a claim. Such subject matter is not necessarily "specifically excluded" from coverage under the doctrine unless its inclusion is somehow inconsistent with the language of the claim. Literal failure to meet a claim limitation does not necessarily amount to a "specific exclusion."

*Id.* at 1316. The Federal Circuit's specific explanation that claim 6 in the *Ethicon* case was subject to summary judgment not merely because the allegedly infringing lockout was spaced apart from the longitudinal slots, but rather because it was spaced so far away that no reasonable fact finder could find the spacing to be insubstantial teaches that the

court must examine the infringed machine to determine whether a reasonable fact finder could determine not whether each element of claim 10 is present in the accused machine, but rather whether a reasonable fact finder could determine the accused machine to have only insubstantial differences with each element of claim 10.

The court concludes that a reasonable finder of fact could determine that defendant's machine has no more than insubstantial differences with each element of claim 10. The court, accordingly, denies summary judgment. Defendant contends that its machine does not contain the "telescoping linkage" found in claim 10. Defendant also contends that its machine does not have a "front pivotal connection with the tongue at a point" as found in claim 10. Further, defendant contends that its machine does not have a front pivotal connection with the tongue at a point "which is approximately equidistant" from the opposite ends of the telescoping drive line as found in claim 10.

Although the defendant is correct that its machine does not literally possess any of the three elements challenged above, the record now before the court could allow a reasonable finder of fact to believe that there are only insubstantial differences between defendant's machine and claim 10. Defendant's machine, while not having a "telescoping linkage" as defined by the court, see Hay & Forage, 25 F.Supp.2d at 1178 ("[T]he term 'telescoping linkage' ... means a linkage having overlapping cylindrical sections."), does have a U-shaped bracket secured to the underside of the tongue, sliding plate guide channels carried by the bracket, a plate that is slidable within and along the length of the guide channels, a steering arm connected to the plate by a ball joint, and ears on the steering arm which straddle the junction box. Plaintiffs' experts have testified that all of these elements comprise the steering structure of the accused machine. The court believes that the sliding plate construction is not so far distant from a telescoping linkage that no reasonable fact finder could believe the differences to be insubstantial. As plaintiffs argue, a reasonable finder of fact could conclude that

> [t]he two plastic guide channels and the plate slidable along the length of the guide channels amount to a pair of telescopic members, with the plate being slidable in the guide tracks in the same way that two cylindrical tubes would slide relatively, one with respect to the other. The guide channels are in effect a tubular member with an open segment on each side. However, the open segments are narrow enough to prevent the plate from escaping. The only difference between this construction and two overlapping cylindrical sections is the fact that the plate and its guide track are not "cylindrical."

Similarly, while the defendant's machine does not have a "front pivotal connection with the tongue at a point" as defined by the court, see Hay & Forage, 25 F.Supp.2d at 1180 ("steering structure must be connected to the tongue at a spot which allows for pivotal movement"), the defendant's machine does include a mobile pivot point. Moreover, the pivot point, at least if plaintiff's evidence is believed, is always "at least approximately equidistant" from the opposite ends of the telescoping drive line. There is a dispute of material fact concerning whether these differences are substantial or whether the accused machine operates with the same function in the same way to produce the same result. See Corning Glass Works v. Sumitomo Electric U.S.A., Inc., 868 F.2d 1251, 1259 (Fed.Cir.1989) ("An equivalent must be found for every limitation of the claim somewhere in the accused device, but not necessarily in a corresponding component, although that is generally the case.").

Defendant's other arguments may or may not be sufficient to convince the court that defendant's machine does not infringe claim 10 under the doctrine of equivalents when the court sits as trier of fact.[4] They are not sufficient, however, to support summary judgment in light of the court's determination that there are genuine issues of material fact. Accordingly, summary judgment is denied.

---

4. The parties have waived any right to a jury trial.

## V. Motion for Summary Judgment of Invalidity for Best Mode Violation

 Defendant contends that claims 1, 2, 8, and 9 of the '859 patent are invalid because one of the named inventors failed to disclose his preferred embodiment pursuant to the "best mode" requirement of 35 U.S.C. § 112 ¶ 1 ("The specification shall ... set forth the best mode contemplated by the inventor for carrying out his invention."). The court disagrees.

The essential facts pertinent to this motion are not in dispute. The named inventors of the '859 patent are Martin E. Pruitt, Cecil L. Case, and H. Keith Garrison. The three men worked jointly on the research that resulted in the '859 patent until Mr. Garrison's retirement in 1989. Mr. Case and Mr. Pruitt continued their research after Mr. Garrison retired. The '859 patent application was filed on April 14, 1992. As allowed by statute, Mr. Garrison did not review and sign the patent application until June 1, 1992—approximately six weeks later. *See* 35 U.S.C. § 111. At the time the application was filed in April, Mr. Garrison was unaware of the specific further developments Mr. Case and Mr. Pruitt had achieved. Thus, in April, the only "best mode" of which Mr. Garrison was aware was the embodiment under research at the time of his retirement three years earlier. When he reviewed and signed the '859 patent application in June, Mr. Garrison agreed that Mr. Case's and Mr. Pruitt's embodiment far surpassed the embodiment Mr. Garrison worked on before retiring.

 Defendant argues the patent is invalid because Mr. Garrison failed to disclose the best mode known to him at the time the patent application was filed. This argument borders on the frivolous.[5] The purpose of the best mode requirement is to "restrain inventors from applying for a patent while at the same time concealing from the public preferred embodiments which the inventor has, in fact, conceived." *Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1144 (Fed.Cir.1997). The Federal Circuit has established a two-part analysis for assessing best mode issues: "The factfinder

must determine that subjectively the inventor knew a better mode of practicing the invention *than the specification discloses*, and that the inventor concealed the better mode." *Wang Labs., Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1582–83 (Fed.Cir.1997) (emphasis added); *see also, e.g., Young Dental*, 112 F.3d at 1144 ("the party seeking to invalidate the patent must present clear and convincing evidence that the inventor both knew of and concealed a better mode of carrying out the claimed invention than was set forth in the specification.") (emphasis added); *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1115 (Fed.Cir.1996) ("To invalidate a patent under the best mode requirement ... *[t]he record must show that the inventor considered an alternative mode superior to the disclosed mode.*") (emphasis added); Herbert F. Schwartz, *Patent Law and Practice* at 72–73 (1996) ("Proving that the best-mode requirement has not been met amounts to showing that the applicant knew of and concealed *a better mode than the mode that was disclosed.* ") (emphasis added).

Defendant's arguments essentially amount to semantic quibbles about the proper formulation of the test for a best mode violation. One alternative formulation of the test is as follows:

Determining whether a patent complies with the best mode requirement involves two underlying factual inquiries. First, it must be determined whether, at the time the patent application was filed, the inventor had a best mode of practicing the claimed invention. This inquiry is wholly subjective and addresses whether the inventor must disclose any facts in addition to those sufficient for enablement. Second, if the inventor had a best mode of practicing the claimed invention, it must be determined whether the specification adequately disclosed what the inventor contemplated as the best mode so that those having ordinary skill in the art could practice it. The latter question is largely an objective inquiry that depends upon the

---

5. The court commends plaintiffs' attorneys for filing a thorough and non-derogatory response to

defendant's motion notwithstanding the motion's blatant lack of merit.

scope of the claimed invention and the level of skill in the art.

*United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1212 (Fed.Cir.1996). Under a rigid, formalistic application of this test, Mr. Garrison could be said to have violated the best·mode requirement because the best mode of which he knew was not disclosed at the time the '859 patent application was filed. Such an application, however, would be a disservice to the spirit and purpose of the best mode requirement, especially where countless other formulations of the best mode violation test require a comparison between the inventor's subjective state of mind and the disclosed mode. Mr. Garrison simply did not believe his embodiment was better than the disclosed embodiment. He was unaware of the disclosed embodiment at the time the '859 application was filed. When he became aware, he wholeheartedly agreed that the disclosed embodiment was better. The court cannot see how this scenario involves concealing a preferred embodiment from the public. *See Young Dental*, 112 F.3d at 1144. Accordingly, summary judgment is denied.

## VI. Motion for Summary Judgment Dismissing Defendant's Defenses and Counterclaims Related to Mr. Berlivet

Plaintiff moves for summary judgment dismissing defendant's defenses and counterclaims related to Mr. Berlivet. These defenses and counterclaims allege, inter alia, that the '859 patent is invalid because it was derived from Mr. Berlivet's work, see 35 U.S.C. § 102(f) ("A person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented."), or that the patent is invalid because Mr. Berlivet was improperly omitted as a named co-inventor. Because defendant has demonstrated genuine issues of material fact supported by corroborating evidence, the court denies summary judgment.

■■■■ A claim that a patentee derived an invention from another addresses the issue of originality: "[w]ho invented the subject matter?" *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed.Cir.1993). A derivation defense amounts to a claim that the named

patentee did not invent the subject matter of the patent because the patentee derived the invention from another. *Id.* A party asserting invalidity of a patent because of derivation must show by clear and convincing evidence both conception of the invention by another and communication of the invention to the patentee. *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed.Cir.1997) (citing *Price*, 988 F.2d at 1190). The ultimate question of whether a patentee derived an invention from another is one of fact, but the determination of whether there was a prior conception is a matter of law based on subsidiary factual findings. *Price*, 988 F.2d at 1190 (citations omitted).

■■■■ Conception is "the touchstone of inventorship." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed.Cir.1998). It is the "formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is hereafter to be applied in practice." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed.Cir. 1986). "Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed.Cir.1994). Conception must include every feature of the claimed invention. *Burroughs Wellcome*, 40 F.3d at 1228 (citing *Coleman v. Dines*, 754 F.2d 353, 359 (Fed.Cir.1985)).

■■■■ The party challenging the patent must also show that the purported inventor communicated his or her idea to others. The inventor must be shown to have disclosed to others his or her "complete thought expressed in such clear terms as to enable those skilled in the art to make the invention." *Coleman*, 754 F.2d at 359.

■■■■ Both conception and communication, in order to satisfy the challenger's burden of proof by clear and convincing evidence, must be proven by more than merely the purported inventor's testimony. *Price*, 988 F.2d at 1194 ("[A]n inventor's testimony

respecting the facts surrounding a claim of derivation ... cannot, standing alone, rise to the level of clear and convincing proof. Throughout the history of the determination of patent rights, oral testimony by an alleged inventor asserting priority over a patentee's rights is regarded with skepticism."). Accordingly, corroborating evidence is required to support claims of derivation. The Federal Circuit has taught that evaluating corroborating evidence requires application of a "rule of reason" analysis. *Id.* at 1195. Under the rule of reason, all pertinent evidence must be evaluated so that a sound determination of the credibility of the inventor's story may be reached. *Id.* The Federal Circuit has held that circumstantial evidence about the inventive process may corroborate an inventor's testimony. *Ethicon, Inc.,* 135 F.3d at 1461. The Federal Circuit has also held that an entry in a date book concerning a party at which a purported inventor assertedly demonstrated her invention to others, coupled with the physical production of the invention at trial and the testimony of friends who attended the party, was sufficient corroborating evidence of prior public use to support a jury verdict of invalidity under the prior public use doctrine. *Beachcombers v. WildeWood Creative Prods., Inc.,* 31 F.3d 1154, 1159–60 (Fed.Cir.1994). In rare cases where there is no physical evidence at all, however, the mere testimony of friends and interested parties is insufficient corroboration to support a factfinder's determination of invalidity. *Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1998 WL 385665, at *6 (Fed.Cir. July 10, 1998). Corroboration is not necessary for every fact issue. *Ethicon, Inc.,* 135 F.3d at 1461.

The testimony of Mr. Berlivet in this case unequivocally supports a finding that the named inventors of the '859 patent derived their invention from his work in the late 1970s in Coex, France. Accordingly, the only question before the court is whether Mr. Berlivet's testimony is sufficiently corroborated to preclude summary judgment.

Although it is a very close call, the court feels constrained to deny summary judgment. Plaintiffs go to great lengths to attempt to convince the court that the defendant's purported corroborating evidence is insufficient or not corroborative. However, after carefully examining the entire record pursuant to the rule of reason, the court concludes that when all credibility determinations and inferences are made in defendant's favor, sufficient corroborating evidence exists to deny summary judgment.[6] When the court sits as trier of fact, it will have the ability to assess the credibility of witnesses, view defendant's evidence in more enlightening context, and make a more accurate determination of the weight to accord the various corroborative proffers the defendant has made. The court as trier of fact may or may not be persuaded that defendant has met its burden by clear and convincing evidence, but the court simply cannot say at this stage that sufficient corroborating evidence does not exist and that summary judgment should be granted.

The court reaches the same conclusion with respect to defendant's claims that Mr. Berlivet was improperly omitted as a co-inventor of the '859 patent. "A patented invention may be the work of two or more joint inventors." *Ethicon, Inc.,* 135 F.3d at 1460 (citing 35 U.S.C. § 116). As with deri-

---

**6.** Specifically, the court notes that various notations in contemporaneous documentary evidence confirm at least the existence of the "X56–5" machine. Mr. Berlivet's testimony, if believed, indicates that the X56–5 may be a prior conception of the '859 patent. Moreover, the testimony of Mr. Andre Peltan, although sketchy on details, could, if believed, corroborate Mr. Berlivet's testimony that the X56–5 machine contained the pertinent critical concepts. Plaintiff's attack Mr. Peltan's testimony because Mr. Peltan is allegedly Mr. Berlivet's friend. The only indication of such friendship in the record, however, is Mr. Berlivet's testimony that the two had dinner to-

gether the evening before Mr. Berlivet's deposition. ("Oh, in France when we are on dinner, ... we never speak about work." (Berlivet dep. at 37)).

Moreover, there is ample corroborating evidence which, if believed, could indicate that Mr. Berlivet communicated his work on the X56–5 to his then-colleagues in Hesston, Kansas—the named inventors of the '859 patent. Mr. Dexter Schaible so testified, and there are ample written records indicating that Mr. Berlivet regularly collaborated with Mr. Pruitt and Mr. Case during the relevant time period.

vation challenges, a party challenging a patent's validity for failure to name a co-inventor must prove contribution to the invention by clear and convincing evidence. *Id.* at 1461. Just as in derivation challenges, "conception is the touchstone of inventorship." *Id.* at 1460. Thus, a purported co-inventor must show by clear and convincing evidence that he or she contributed to the conception of the invention. *Id.* at 1460. Proving conception in the co-inventorship context, however, is less difficult than proving conception in the derivation context. *Id.* ("[E]ach of the joint inventors need not 'make the same type or amount of contribution' to the invention. 35 U.S.C. § 116. Rather, each needs to perform only a part of the task which produces the invention."). Moreover, a purported co-inventor need not make a contribution to every claim of a patent; contribution to one claim is enough. *Id.* As with derivation claims, corroborating evidence is required. *Id.* at 1461.

The court denies summary judgment on the issue of co-inventorship for the same reasons it denied summary judgment on the issue of derivation. There are corroborated genuine issues of material fact concerning whether Mr. Berlivet played a part in the conception of the '859 patent.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for partial summary judgment of non-infringement of claim 10 of the '859 patent (Doc. 115) is denied.

**IT IS FURTHER ORDERED THAT** defendant's motions for partial summary judgment of invalidity (Docs.117, 119) are denied.

**IT IS FURTHER ORDERED THAT** plaintiff's motion for partial summary judgment dismissing defendant's defenses and counterclaims related to Mr. Berlivet (Doc. 132) is denied.

**IT IS 80 ORDERED.**